KING v. BYNUM.

(Filed March 8, 1905).

*Hearsay Evidence—Trust—Issues.*

1. In an action brought to convert defendants into trustees of land for plaintiffs' benefit, testimony as to the general understanding prevailing among bidders at a sale, not based upon personal knowledge of the fact, gathered at the sale, but merely upon information derived from others after the sale, is incompetent, as hearsay, and in this instance, was very material and highly prejudicial to the defendants.

2. Evidence, oral or written, is called hearsay, when its probative force depends in whole or in part upon the competency and credibility of some person other than the witness by whom it is sought to produce it.

3. In an action to establish a trust and for an accounting, it is proper to submit an issue to ascertain the entire rents and profits, and not merely three years' rents and profits preceding suit, as they can be charged off against any claim asserted by defendants for the purchase-money and betterments.

CONNOR, J., dissents.

ACTION by T. B. King and others against A. S. J. Bynum and others, heard by *Judge W. B. Council* and a jury at the November Term, 1904, of the Superior Court of PITT County.

This was an action brought for the purpose of having the defendants declared trustees for the use and benefit of the

plaintiffs, as their interest might appear, in the land described in the complaint and for an accounting for the rents and profits received from said land.

The Court submitted the following issues tendered by the plaintiffs, to which the defendants excepted:

1. Did the defendants purchase the land described in the complaint for the joint use and benefit of themselves and the plaintiffs, their co-tenants, as alleged in the complaint?

2. What amount in rents and profits have the defendants received from said lands since the purchase thereof?

The defendants tendered the following issue:

1. Did the defendants purchase the lands in controversy under a parol agreement with the plaintiffs which was subsisting at the time of the sale, to hold said lands in trust for the plaintiffs and defendants, and to convey said lands to the plaintiffs upon their payment to the defendants the purchase price of said lands?

His Honor declined to submit the issue tendered by the defendants, to which the defendants excepted.

The other facts and exceptions are stated in the opinion.

*Skinner & Whedbee* and *Moore & Fleming,* for the plaintiffs.

*Jarvis & Blow,* for the defendants.

BROWN, J. Although the record in this case is voluminous and the exceptions many, a brief statement only is necessary to a proper understanding of the exceptions of the defendants sustained by this Court, in consequence of which a new trial is made necessary.

R. A. Bynum, deceased, by his will devised the land described in the pleadings to the plaintiffs and defendants as tenants in common owning equal interests therein. The executor of R. A. Bynum, to-wit, J. N. Bynum, instituted a

KING *v.* BYNUM.

special proceeding to sell this and other tracts of land belonging to the testator's estate to pay debts. At the sale made in pursuance of the decree in said proceeding, the defendant A. S. J. Bynum, called Zeb Bynum, purchased the tract of land described in the complaint known as the "Askew land" for $800, and had it set down to himself and his brother and co-defendant, Ben. Bynum. They paid the purchase-money and a deed was made to them by the executor.

The *feme* plaintiffs, Mary King and Priscilla Turnage, bring this suit to convert said defendants into trustees for their benefit in respect to one undivided fourth, each, of the land. The plaintiffs allege that they are tenants in common with the defendants; that the land was sold to pay the assessment agreed upon as necessary to liquidate the testator's debts; that the *feme* plaintiffs were minors and their mother was their general guardian; that she was aged and infirm and relied solely on Zeb Bynum, her son, to attend to her business affairs; that Zeb Bynum attended to the proceeding to sell the land and represented the interests of the plaintiffs; that he agreed that this Askew land should be assessed at $800, and agreed with his mother to buy it in for the benefit of all the owners thereof. The plaintiffs further alleged that it was known at the sale that the land was to be bid off for the mother by Zeb and in consequence no one bid, and Zeb secured the land at $800, worth $2,500. Upon the trial the Court below submitted two issues, one of which is: "1. Did the defendants purchase the land described in the complaint for the joint use and benefit of themselves and the plaintiffs, their co-tenants, as alleged in the complaint?" Upon the trial of that issue much evidence was introduced.

We do not deem it necessary to consider the many interesting questions argued, or to pass upon all the exceptions in the record. As a new trial is to be had, they may not again arise.

There is one exception in the record which we feel compelled to sustain. That relates to the erroneous admission of evidence, and the error is of sufficient importance to justify another trial. Exception 7. P. J. Bynum testified for the plaintiffs that he was at the sale and that "he did not know whether there was any general understanding among bystanders present as to who was bidding for the land, for whom it was to be bid in, and to whom it was cried off." In response to another question he again stated that he did not know "whether it was talked or understood among those present at the sale that the land was to be bought for all the children of J. P. Bynum (meaning the plaintiffs and defendants), and did not know that was the reason the land did not bring a larger price at the sale." This witness was then asked by the plaintiffs "Why was it that the land you say was worth $2,500 did not bring but $800 at the sale?" The witness answered: "The reason was that it was understood my mother was going to buy the land for the children, and people did not want to bid against her, at least several told me so." The question and answer were both objected to in apt time by the defendants, and their objections were overruled and they excepted. In the admission of this evidence we are of opinion there is reversible error, the evidence being both incompetent, very material and well calculated to influence the jury in a manner prejudicial to the defendants.

The objection to the evidence is that it is hearsay. We are of opinion that the evidence comes clearly within the rule prohibiting hearsay evidence, and that it is hearsay of a vague and indefinite character. The evidence of a person present at the sale as to what was done at the time of the sale and as to the general understanding prevailing among the bidders and bystanders, tending to explain why the land sold for so small a price, is competent. We do not mean to hold otherwise. This witness does not pretend to testify to that. He states he was at the sale, but from his answers to the ques-

tions asked him it is plain he did not undertake to testify to what occurred there. In response to questions by the plaintiffs for the purpose of eliciting such information, he stated he did not know.

He was permitted, over the objection of the defendants, to state that several persons told him why it was the land sold for so little, viz., because it was understood the mother was to buy the land for the children. From the entire testimony of this witness, we are bound to conclude he referred to what "several persons" told him after the sale. This is evidently hearsay, the words not implying personal knowledge of the facts but merely information derived from others. *Snodgrass v. Caldwell,* 90 Ala., 323.

It is not under oath, not subject to cross-examination, not a part of *res gestæ* and not in the presence of the defendants, and could not be corroborative. The witness does not even give the names of those "several persons" who told him. "Evidence, oral or written, is called hearsay when its probative force depends in whole or in part upon the competency and credibility of some person other than the witness by whom it is sought to produce it." 11 Am. & Eng. Enc. (2 Ed.), 520, and cases cited; *Coleman v. Southwick,* 9 Johns. (N. Y.), 45; *State v. Haynes,* 71 N. C., 79. There are exceptions to this general rule excluding hearsay evidence laid down in the text writers on evidence, such as admissions, confessions, dying declarations, declarations against interest, ancient documents, declarations concerning matters of public interest, matters of pedigree and the *res gestae.* The most ingenious mind can hardly bring the testimony pointed out within any recognized exception to the general rule excluding hearsay evidence. 1 Greenleaf Ev. Ch., 6 (13 Ed.), gives the recognized exceptions to the general rule.

The case of *Cheek v. Watson,* 85 N. C., 196, is relied upon by the plaintiffs. The distinction is very apparent. In that

KING *v.* BYNUM.

case *Chief Justice Smith* says: "It would seem this general impression controlling the conduct of bidders was susceptible of proof as a fact in the case." * * * "If the offer was to ascertain from the opinion of one witness the opinion of others, it was properly refused." "If the purpose was to prove as a fact the influence operating on a large number of others, which restrained the brother-in-law from participating in the sale, it was certainly competent evidence in charging the estate thus acquired with a trust." This authority is well sustained by *Judge Gaston's* opinion in *Neely v. Torian,* 21 N. C., 410.

The witness Bynum did not testify to what was the general understanding at the sale, as a fact. Under the high authority quoted, that would have been competent had he known of his own knowledge gathered at the sale. He had already stated twice that he did not know what that general understanding was, and it was in response to the repeated questions of the plaintiff's counsel that he stated finally why the land brought so little, and qualified what he said with the words "at least several persons told me so." This falls far short of proving as a fact within his own knowledge, gathered at the sale, what the general understanding was.

To constitute reversible error, the evidence admitted must not only be incompetent, but it must be prejudiced and calculated to influence the minds of the jury against the appellant. In our view, the testimony was highly prejudicial to the defendants. The chief contention of the plaintiffs (in fact before the jury, doubtless their strongest plea) was that the land was bought in by the defendants at a third of its value because the bystanders believed it was being purchased for the mother and the young girls as well as for the defendants themselves, and therefore no one would bid. The hearsay evidence improperly admitted was well calculated to sustain this plea, and to greatly influence the minds of the jurors.

It is unnecessary to notice the other exceptions. They refer to alleged errors which may not arise on another trial. We deem it proper, however, to observe that the first issue is rather indefinite in form, and while we do not formulate the issue we suggest that the first issue tendered by the defendants more nearly presents the issue raised by the pleadings, but this is not intended to preclude the submission of others. The second issue is correct. While the plaintiffs in an action of ejectment would be confined to three years' rents and profits preceding suit, in this action it is necessary to ascertain the entire rents and profits. They can be charged off against the purchase-money and betterments in case the plaintiffs shall finally succeed, if such claim is made by the defendants. For the error pointed out there must be a

New Trial.

CONNOR, J., dissents.