WILLIAM MASSEY, EMPLOYEE, v. BOARD OF EDUCATION OF MECK-
LENBURG COUNTY, EMPLOYER.

(Filed 8 February, 1933.)

1. **Master and Servant F i—Sufficiency of evidence to support finding
is question of law.**

Although the findings of fact of the Industrial Commission on conflict-
ing evidence are final and not reviewable by the courts, the question
of the sufficiency of the evidence to support its finding is a question of
law and is reviewable, and where the evidence before the Industrial
Commission in a hearing before it is not conflicting and the only question
is whether it is sufficient to support its finding relative to whether the
injury arose out of and in the course of the injured employee's employ-
ment, the question is one of law and is reviewable by the court upon
appeal. N. C. Code of 1931 (Michie), sec. 8081(j) (f).

2. **Master and Servant F d—Evidence is to be considered in light most
favorable to claimant in hearing before Industrial Commission.**

All the evidence which makes for the claim of an injured employee in
a hearing before the Industrial Commission will be considered in the
light most favorable to the claimant and he is entitled to every reasonable
intendment thereon and every reasonable inference therefrom.

3. **Master and Servant F b—Held: evidence showed that injury resulted
from accident arising out of and in course of employment.**

Evidence at a hearing before the Industrial Commission that the appli-
cant for compensation was employed as a janitor at a public school, and
that it was part of the services required of him to clean the building and
to purchase cleaning material necessary therefor with money furnished
him by teachers, and that it was customary for him to buy such material
at a certain store while on his way to work, and that on his way to work
he was struck and injured by an automobile while attempting to cross
the street to the store to buy cleaning material according to his custom
*is held* sufficient to show that the injury was from an accident arising
out of and in the course of his employment, and the evidence not being
conflicting, the question is one of fact, and the Industrial Commission's
finding to the contrary is erroneous.

APPEAL by defendant from *Harding, J.,* at April Term, 1932, of
MECKLENBURG. Affirmed.

A claim was filed by the plaintiff in the above matter for compensa-
tion before the Industrial Commission. A hearing before an individual
Commissioner, Matt H. Allen, was held in Charlotte on 25 April, 1931.
The hearing Commissioner found that the injury did not arise out of
and in the course of the plaintiff's employment, and entered an award
denying compensation and dismissing the case. An appeal was taken
to the full Commission and after a hearing by the full Commission on
15 July, 1931, the full Commission affirmed the award of the individual

7—204

Commissioner. The plaintiff appealed to the Superior Court. His Honor, Judge Harding, found on the facts that the accident did arise out of and in the course of the plaintiff's employment, reversed the decision of the Commission and directed that the cause be remanded to the Industrial Commission. The defendants excepted, assigned error, and appealed to the Supreme Court.

About six miles from Charlotte, N. C., is a county school, known as "Woodlawn." Frank Graham is chairman of the Mecklenburg County School Committee. The plaintiff was employed by him as janitor at $60.00 a month. He says of plaintiff: "I have known William Massey about 25 years, I suppose. I know his character is good. . . . William being a faithful janitor. . . . I have always known him to be very reliable and dependable. If he told me anything, he told the truth."

The defendant introduced no evidence, the evidence of plaintiff was to the effect that William Massey lived in Charlotte and had to travel each working day to his work from Charlotte, and his duties required him to be at work from 6 a.m. to 6 p.m., and sometimes later "depending upon how much cleaning I have to do in the evening." At the time of his injury, on 28 November, 1931, he was 48 years old and had eleven children, and "am trying to buy my own home." In crossing a street on his way to work, to buy certain cleaning material he was instructed and given the money to buy, he was struck by a motor vehicle. He lost five teeth. Dr. W. A. Williams, a dentist, testified, in part: "I removed the teeth and jaw bone. I heard what he said as to the amount of jaw bone gone and that was about right, about two inches wide and three-quarters of an inch deep."

Plaintiff was injured in the morning about 10:30 o'clock and was unconscious several hours. There was also a cut lip and wound on his scalp and the result of the injury affected his walking, so that "I give out." One of his hands was affected so that he did not have much "grip in my hand."

Dr. E. E. Blackmon testified, in part: "I should say that is quite an injury. In my opinion his earning power is somewhat impaired by his present condition. He is not able to earn what he could earn if he didn't have this impairment of his arm. I don't know what per cent his earning power is impaired. . . . His upper left jaw was fractured."

Mrs. W. C. Boylston, principal of the school where plaintiff worked, testified, in part: "His job is janitor and he drives the bus. He makes one trip on the bus. I customarily send him to the store to get things for the school. As to whether at the time he was hurt on 28 November, I had previous to that time instructed him to go to the A. & P. store and buy some material, I didn't say A. & P., but *I asked him to get some cleaning material and instructed my sixth-grade teacher to give him some*

*money out of this project, which she did.* That was on Wednesday before he was hurt on Friday. *I instructed the teachers to have him to get some materials.* . . . I think, as I remember, he told me he got the supplies near his home because we hadn't any store at the school and he would have to go out of the way. *I would say it was his custom to go to the store first and then go to the school. He would save some time by doing that.* I have been principal at Woodlawn School for two years and known him that long. *I know his character; it is good, absolutely. If he told me anything I would believe him. He is very dependable. Everything I told him to do I knew it would be done. I found him to be a good man."*

Mrs. G. E. Smith, a teacher in the school, testified, in part: "On Wednesday before the Friday on which William was hurt, I gave him some money to buy some materials. . . . *He always bought it when he was out of any material and needed to clean up the school building.* . . . He would go to the store first because there were not any stores right close and a store was on his way between his home and the school. *It would save time by buying it on his way in. That was his custom. It was after store hours when he would leave the school."*

William Massey, plaintiff, testified, in part: "On Friday morning I left my home on the way out to the schoolhouse to do some cleaning, and stopped at the store, an A. & P. store, to buy the material. Just as I started to walk across the street on my way to the store this car struck me. That was about 10:30, and from that time to about three o'clock I didn't know anything. I didn't get to the store at all. I never did get to the store. *My teachers had told me to go to a store and get this material. I started there from my house carrying out their orders. I saved time by going to the store before I went to the school. I had done the same thing before.* . . . I had started across the street to the store to buy this material the teachers had told me to buy. *I had the money in my pocket to buy it, and if I had got it I would have gone to school and cleaned up my work.* . . . I always buy my merchandise at the same place, get it at the same place. As to whether I ever bought any anywhere else except this A. & P., this Brillo, they didn't have it many places and I could always get it at an A. & P. *I didn't buy any of my other materials elsewhere."*

*Robert B. Street for plaintiff.*
*C. H. Gover and Wm. T. Covington, Jr., for defendants.*

CLARKSON, J. The Workmen's Compensation Law, chap. 120, Public Laws of N. C., 1929, section 2(f) (N. C. Code, 1931 (Michie), sec. 8081(i), subsec. (f), is as follows: "'Injury' and 'personal injury' shall

mean only injury by accident arising out of and in the course of the employment, and shall not include a disease in any form, except where it results naturally and unavoidably from the accident."

It is a well-settled rule in this jurisdiction that it is a question of law as to whether there is sufficient competent evidence, more than a scintilla, to support an action. It is also the well-settled rule of practice in this jurisdiction, in cases of nonsuit, and cases of this kind, that the evidence which makes for the plaintiff's claim and which tends to support his cause of action, whether offered by the plaintiff or elicited from the defendant's witnesses, will be taken and considered in its most favorable light for the plaintiff, and he is entitled to the benefit of every reasonable intendment upon the evidence, and every reasonable inference to be drawn therefrom." *Bellamy v. Mfg. Co.*, 200 N. C., at p. 678; *Jackson v. Creamery*, 202 N. C., 196. The facts and principles of law in both the *Bellamy* and *Jackson* cases, *supra*, are in some respects similar to the case at bar.

It is well settled that if there is any sufficient competent evidence to support the findings of fact of the Industrial Commission, although this Court may disagree with such findings, this Court will sustain the findings of fact made by the Commission. *Kenan v. Motor Co.*, 203 N. C., at p. 110; *Johnson v. Bagging Co.*, 203 N. C., 579; *Richey v. Cotton Mills*, 203 N. C., 595.

On all the evidence, and there was none except that introduced by plaintiff, the hearing Commissioner and full Commission, on an appeal, decided as a matter of law that there was no sufficient competent evidence that the injury to plaintiff was "only injury by accident arising out of and in the course of employment." The court below, on this aspect, overruled the Industrial Commission and directed that the cause be remanded to the Industrial Commission. The defendant appealed to this Court. We can see no error in the decision of the court below. The decisions of the Industrial Commission are persuasive, but not binding on this Court on questions of law. We think there was sufficient competent evidence introduced by plaintiff to sustain his contention that he was entitled to compensation under the Workman's Compensation Law, as before set forth. If there was sufficient competent evidence and it was conflicting, it is well settled that this is for the Industrial Commission to decide and not us.

The "come and go" rule, as laid down in *Hunt v. State*, 201 N. C., 707, is not applicable under the facts in this case. *Edwards v. Loving Co.*, 203 N. C., 189; *Bray v. Weatherly and Co.*, 203 N. C., 160. See *Winberry v. Farley Stores, Inc.*, ante, 79.

The evidence is to the effect that plaintiff was on his way to the schoolhouse, on the day of the injury, to perform his task of cleaning.

He had the money given by the proper authority to buy the "Brillo," the cleaning material, which he usually bought at the A. &. P. store, the place he traded and most likely to have it, and was crossing the street to purchase the material, on his way to the schoolhouse, when he was struck by a motor vehicle. The evidence was that he had a "special mission" or "special service"—"out of hours"—to perform, and it was the custom "in carrying out their orders" for him to purchase material when he was on his way to the schoolhouse. The evidence was that he was out of material which he needed, and the money was given him to buy it, to clean up the school building. In fact, without purchasing the cleaning material on his way to the schoolhouse, he could not do the cleaning, and, if he had not purchased it and performed the duty of cleaning, the employer no doubt had the right of discharge. We think the purchase was a major factor in the plaintiff's movement and not incidental. Without the cleaning material, how could he clean?

A case similar is *Kyle v. Greene High School* (Iowa) 226 N. W. Rep. 71 at p. 72 and 73, citing a wealth of authorities, the following is said: "An exception to the aforesaid general rule is found in cases where it is shown that the employee, although not at his regular place of employment, even before or after customary working hours, is doing, is on his way home after performing, or on the way from his home to perform, some special service or errand or the discharge of some duty incidental to the nature of his employment in the interest of, or under direction of, his employer. In such cases, an injury arising en route from the home to the place where the work is performed, or from the place of performance of the work to the home, is considered as arising out of and in the course of the employment." *Scrivner v. Franklin School District* (Idaho) 293 Pac. Rep, 666.

We think a case similar to the present is *Voehl v. Indemnity Insurance Co. of North America,* decided by the United States Supreme Count, see Advance Sheets filed February 6, 1933. Plaintiff "filed a claim for compensation for an injury sustained through an automobile accident while he was on his way to his employer's place of business on Sunday, April 6, 1930, for the purpose, according to his contention, of performing the duties assigned to him." The concluding part of the opinion, citing numerous authorities in the notes, is as follows: "The general rule is that injuries sustained by employees when going to or returning from their regular place of work are not deemed to arise out of and in the course of their employment. Ordinarily the hazards they encounter in such journeys are not incident to the employer's business. But this general rule is subject to exceptions which depend upon the nature and circumstances of the particular employment. 'No exact

formula can be laid down which will automatically solve every case.' *Cudahy Co. v. Parramore,* 263 U. S., 418, 424. See, also, *Bountiful Brick Co. v. Giles,* 276 U. S., 154, 158. While service on regular hours at a stated place generally begins at that place, there is always room for agreement by which the service may be taken to begin earlier or elsewhere. Service in extra hours or on special errands has an element of distinction which the employer may recognize by agreeing that such service shall commence when the employee leaves his home on the duty assigned to him and shall continue until his return. An agreement to that effect may be either express or be shown by the course of business. In such case the hazards of the journey may properly be regarded as hazards of the service and hence within the purview of the Compensation Act."

The plaintiff, from the record, when he was injured was performing this special mission or service, by the custom and by the direct and specific instructions and orders of the employer. He was on his way to the school building to do the cleaning. There was no unreasonable departure in crossing the street to get the cleaning material, where he usually purchased it, and perhaps could not purchase it elsewhere. He had the money for the purpose furnished by those in authority. It was necessary for him to have this cleaning material to do the work which he was on his way to perform.

We have read with care the record and the most excellent, well prepared briefs of the litigants. We think from the undisputed facts that there was sufficient competent evidence introduced by plaintiff for the Industrial Commission to have allowed compensation.

For the reasons given, the judgment of the court below is
Affirmed.