MARTHA MELL G. SWEATT, WIDOW OF WILLIAM ERNEST SWEATT, DECEASED, v. RUTHERFORD COUNTY BOARD OF EDUCATION AND/OR THE NORTH CAROLINA BOARD OF EDUCATION.

(Filed 6 May, 1953.)

1. **Schools § 8e:　Master and Servant § 40a—**

The liability of the State for compensation for injuries or death caused by accident suffered by employees paid from State school funds is limited to those arising out of and in the course of their employment in connection with the State operated nine months school term in accordance with G.S. 115-370, which must be given the same interpretation as G.S. 97-2 (f).

2. **Master and Servant § 40a—**

The phrases "arising out of" and "in the course of" are not synonymous, but involve two ideas and impose a double condition, both of which must be satisfied in order to render an injury or death compensable.

3. **Master and Servant § 40c—**

The words "arising out of" as used in the Workmen's Compensation Act refer to the cause or origin of the accident, and require that the injury must spring from or have its origin in the employment.

4. **Master and Servant § 40d—**

The words "in the course of" as used in the Workmen's Compensation Act refer to the time, place, and circumstances under which the injury occurs.

5. **Master and Servant § 40c—**

Proof that an employee was at his place of employment and doing his work at the time of the injury, without more, is insufficient to support an award of compensation, since an accident which occurs in the course of the employment does not necessarily or inevitably arise out of it.

6. **Same—Evidence held insufficient to support finding that murder of high school principal by student arose out of school employment.**

The evidence tended to show that an orphanage and the public school authorities jointly own and maintain a building in which a high school is conducted, and that the children of the orphanage attend the public school, G.S. 115-67. The evidence further tended to show that the principal of the high school was paid exclusively out of school funds but also discharged duties as superintendent of the private institution, and that he reprimanded an inmate of the private institution for violating a rule of the institution, and that as a result thereof the inmate shot and killed the principal about 9:30 at night while the principal was in his office and discharging his duties as principal. *Held:* While the principal was fatally injured during the course of his employment, there is no evidence tending to show any causal connection between his employment by the school authorities and the fatal injury so as to support a finding that the injury arose out of the employment, and judgment awarding compensation is reversed.

APPEAL by defendants from *Phillips, J.,* at September Term, 1952, of RUTHERFORD.

Proceeding under Workmen's Compensation Act for compensation claimed by the widow of William Ernest Sweatt, deceased principal of the Union Mills High School, who was murdered by one Hugh Justice on the night of 12 March, 1951.

The pertinent facts developed by the evidence may be summarized as follows:

1. William Ernest Sweatt, deceased, was employed by the defendants as principal of the Union Mills High School at Union Mills in Rutherford County. The deceased also served as Superintendent of Alexander School, Inc., a private corporation which conducts an orphanage or boarding school at Union Mills.

2. The Union Mills High School is conducted in a building located within the boundaries of the campus of Alexander School, Inc. However, the schoolhouse and lot on which it is situate are owned jointly by Alexander School, Inc., and the Board of Education of Rutherford County. The high school was attended by about 300 private students from the Alexander School, Inc., and by some 200 public school students from the surrounding area of Rutherford County.

3. The salary of the deceased William Ernest Sweatt was paid entirely by the defendant State Board of Education, self-insurer.

4. The deceased customarily commenced his duties about 8:00 o'clock in the morning and continued in the performance thereof throughout the day and frequently into the evening and night. His office was located in the high school building.

5. The Union Mills High School was conducted during the usual school hours and on the usual school days—Monday through Friday. The public or county students went home after school hours in the afternoon. As to these students, the usual school hours were kept. However, a supervised study hall was conducted each evening on school days from 7:00 to 9:00 o'clock. The high school students from Alexander School, Inc., were required to attend this supervised study hall. The students residing in the county, not students at the Alexander School, were not required to attend the study hall, and it does not appear that any of the county students ever attended the study hall.

6. The deceased customarily supervised this evening study hall. He also customarily performed some of the duties incident to his position as principal of the Union Mills High School—such as filling out records and reports—in the evenings during the study hall hours. He usually divided his time between supervision of the study hall and the performance of his other duties in his office.

SWEATT v. BOARD OF EDUCATION.

7. Hugh Justice was a boarding student of Alexander School, Inc., and lived in one of its dormitories on the campus. He was also a student in the Union Mills High School.

8. An older girls' dormitory was maintained by Alexander School, Inc., on the campus; and rules had been promulgated by Alexander School, Inc., restricting and limiting the conduct of the older boys with respect to visiting at this dormitory.

9. On the night of 12 March, 1951, at about 7:00 o'clock, the supervisor of the older girls' dormitory, who was also a teacher in the Union Mills Grammar School, saw Hugh Justice talking to a girl near the dormitory at a time and place in violation of one of the regulations of the Alexander School, Inc. She immediately reported the violation to Mr. Sweatt. The supervised study hall was being conducted at that time. Thereafter, in the presence of the supervisor, Mr. Sweatt reprimanded Justice for the infraction of the rule. Justice appeared to be very angry at the reprimand, jumped up, slammed the door, and left the office. There was no evidence that the boy had previously demonstrated any ill-will toward the deceased.

10. Hugh Justice, after the reprimand, left the high school premises, borrowed a 22-caliber rifle from an acquaintance under the pretext that he wished to shoot rats, and returned with the rifle to the high school building.

11. Mr. Sweatt continued to supervise the evening study hall until about 9:00 p.m. He then called several students into his office to consult with them about their work as students in the Union Mills High School, and remained in his office until about 9:30 o'clock. After the last student had left and when he was preparing to leave the building, Hugh Justice entered the office and, by reason of his anger resulting from the reprimand previously administered, committed a murderous assault upon Mr. Sweatt by shooting him just below the left eye, with the bullet coursing inward and upward through the brain and causing his death a few hours later.

12. On deceased's desk were records, such as daily reports from home room teachers and lunch room reports, used by the deceased in making out his monthly reports as high school principal.

The Industrial Commission awarded compensation. The pertinent supporting findings and conclusions of the Commission may be summarized as follows:

1. "As principal of the high school, the deceased reprimanded Hugh Justice for a violation of the rules. . . ."

2. "As a result of the reprimand, Hugh Justice became angry, obtained a lethal weapon, and murderously assaulted the deceased, causing his death."

3. "The rule violated was formulated by the Alexander School, Inc. However, . . . this is of no importance. The reprimand was administered by the deceased as principal of the Union Mills High School to a student in that school. It cannot be said that in administering the reprimand, the deceased went beyond his employment as principal."

4. That the deceased came to his death as a result of an injury by accident arising out of and in the course of his employment by the defendants as principal of Union Mills High School.

The defendants in apt time excepted to the determinative findings and conclusions and to the award of the Commission, and appealed to the Superior Court.

When the case came on for hearing in the Superior Court, the defendants moved the court "that the cause be remanded to the North Carolina Industrial Commission for a more specific finding of fact as to the relationship existing between Professor . . . Sweatt and Alexander School, Incorporated . . ." The motion was overruled and the defendants excepted. Thereupon, the court, after hearing the defendants' exceptions to the findings and conclusions of the Commission, entered judgment overruling the exceptions and approving and confirming the findings and conclusions of the Commission and in all respects sustaining and affirming the award.

The defendants excepted and appealed to this Court, assigning errors.

*Hamrick & Jones for plaintiff, appellee.*

*Attorney-General McMullan and Assistant Attorney-General Love for defendants, appellants.*

JOHNSON, J. Under the free public school system of this State the responsibility for providing and maintaining school buildings and physical plant facilities rests primarily on the local units of government; whereas the financial responsibility of operating the State-wide school system, including payment of teachers' salaries, rests primarily on the State, with the duties of fiscal control and management being administered by and through the State Board of Education. Article IX, Section 8, Constitution of North Carolina; Chapter 115, General Statutes of North Carolina.

It is expressly provided by statute, State-wide in scope, that children living in and cared for by private institutions, like Alexander School, Inc., operated for the purpose of rearing orphan children, are considered residents of the local school administrative unit in which the institution is located, "and are permitted to attend the public school or schools of such unit . . ." G.S. 115-67.

In the case at hand it is noted that while the building in which the Union Mills High School is conducted is located on the campus of Alexander School, Inc., it is owned and maintained jointly by the Board of Education of Rutherford County and Alexander School, Inc., by virtue of a special act of the General Assembly. Chapter 676, Session Laws of 1945. *Cf.* G.S. 115-88. This joint ownership of the school building no doubt has proved mutually beneficial to both local agencies. However, it is noted that the special act authorizing joint ownership of the building did not extend the scope of the decedent's duties as high school principal under his employment by the State Board of Education.

True, the record here discloses that the local county board of education knew the deceased was serving in the dual roll as superintendent of Alexander School, Inc., and as principal of the Union Mills High School, with his entire salary being paid by the State Board of Education. Nevertheless, such permissive arrangement did not merge his duties as superintendent of the private institution with those as principal of the high school, nor extend the orbit of liability of the State Board of Education under the Workmen's Compensation Act and the School Machinery Act to cover his duties as superintendent of the private institution.

As to this, it is significant that G.S. 115-370 (1951 Supplement) marks out the bounds and limits of liability of the State with respect to employees who are "paid from state school funds." The statute expressly provides: "Liability of the State for compensation shall be confined to school employees paid by the state from state school funds for injuries or death caused by accident arising out of and in the course of their employment in connection with the state operated nine months school term."

The expression "arising out of and in the course of their employment . . .," as used in the foregoing section of the School Machinery Act (G.S. 115-370) carries the same meaning and calls for the same interpretation and application as does the similar expression appearing in the text of the Workmen's Compensation Act. G.S. 97-2 (f). And, in interpreting and applying the meaning of the expression, "arising out of and in the course of the employment," as it appears in the Workmen's Compensation Act, it has been uniformly held by this Court that the phrases "arising out of" and "in the course of" are not synonymous but involve two ideas and impose a double condition, both of which must be satisfied in order to bring a case within the Act. *Davis v. Veneer Corp.,* 200 N.C. 263, 156 S.E. 859; *Bryan v. T. A. Loving Co.,* 222 N.C. 724, 24 S.E. 2d 751; *Brown v. Aluminum Co.,* 224 N.C. 766, 32 S.E. 2d 320; *Vause v. Equipment Co.,* 233 N.C. 88, 63 S.E. 2d 173. See also 58 Am. Jur., Workmen's Compensation, Section 709.

The words "arising out of" refer to the cause or origin of the accident; they involve the idea of causal connection between the employment and

the injury, and impose the condition that an injury in order to be compensable must spring from or have its origin in the employment. *Vause v. Equipment Co., supra; Duncan v. City of Charlotte,* 234 N.C. 86, 66 S.E. 2d 22; *Matthews v. Carolina Standard Corp.,* 232 N.C. 229, 60 S.E. 2d 93; *Hegler v. Mills Co.,* 224 N.C. 669, 31 S.E. 2d 918.

The term "in the course of" relates more particularly to the time, the place, and the circumstances under which the injury occurs. *Hollowell v. N. C. Department of Conservation and Development,* 206 N.C. 206, 173 S.E. 603; *Berry v. Furniture Co.,* 232 N.C. 303, 60 S.E. 2d 97; *Withers v. Black,* 230 N.C. 428, 53 S.E. 2d 668; *Conrad v. Foundry Co.,* 198 N.C. 723, 153 S.E. 266.

And in interpreting and applying the meaning of the complete expression, "arising out of and in the course of the employment," it must be kept in mind that while an accident arising out of an employment usually occurs in the course of it, it does not necessarily or invariably do so. *Bolling v. Belk-White Co.,* 228 N.C. 749, 46 S.E. 2d 838; *Withers v. Black, supra.* See also *Morrow v. State Highway and Public Works Commission,* 214 N.C. 835, 199 S.E. 265. Nor does an accident which occurs in the course of an employment necessarily or inevitably arise out of it. *Harden v. Furniture Co.,* 199 N.C. 733, 155 S.E. 728; *Beavers v. Power Co.,* 205 N.C. 34, 169 S.E. 825; *Hollowell v. N. C. Department of Conservation and Development, supra; Walker v. Wilkins,* 212 N.C. 627, 194 S.E. 89; *Plemmons v. White's Service, Inc.,* 213 N.C. 148, 195 S.E. 370; *Bryan v. T. A. Loving Co., supra; Matthews v. Carolina Standard Corp., supra; Vause v. Equipment Co., supra; Bell v. Dewey Bros. Inc.,* 236 N.C. 280. See also 58 Am. Jur., Workmen's Compensation, Section 210.

Therefore proof that an employee was at his place of employment and was doing his usual work at the time of the injury, without more, is insufficient to support an award of compensation. *Plemmons v. White's Service, Inc., supra; Walker v. Wilkins, supra; Harden v. Furniture Co., supra.*

Here there is evidence tending to show that the deceased customarily went to his office in the high school building at night and there performed work in the regular course of his employment as principal of the Union Mills High School, such as working on records and filling out reports. The evidence further indicates that on the night in question he was in his office, and books and records were found on his desk indicating that he had been at work on them. Therefore, on the record as presented it is readily inferable that he was at the place of his employment and was about the performance of his usual duties as principal of the Union Mills High School at the time of the murderous assault. Accordingly, the record supports the finding and conclusion of the Commission that the

fatal shooting occurred "in the course of" the deceased's employment as principal of the Union Mills High School.

The mooted question is whether there is any evidence to support the finding and conclusion of the Commission that the deceased came to his death as a result of an "injury arising out of . . . his employment" as principal of the Union Mills High School, *i.e.,* whether there is any evidence of causal connection between the murderous assault and his employment as high school principal.

The Commission rightly found that the deceased was murderously assaulted by Hugh Justice "as a result of the reprimand," and that the rule for the enforcement of which the reprimand was administered "was formulated by the Alexander School, Inc."

However, it is manifest that this record does not support the finding that the reprimand was administered by the deceased "As principal of the high school."

The rule to which the reprimand was addressed was designed not for the government of Union Mills High School but solely to prohibit the older boys from Alexander School, Inc., from visiting within a certain distance of the older girls' dormitory during evening hours. It applied in no way to any of the public school students, who at the time of its application had gone home.

It is true that at certain times Hugh Justice was a student at Union Mills High School. Nevertheless, he was a patron of Alexander School, Inc., a private child care or orphanage institution. He lived in a dormitory maintained by this institution. After the close of the regular school day and with the advent of nightfall, he was subject solely to the disciplinary rules of the orphanage, and in no manner to those governing the State-supported public school system.

The finding and conclusion reached by the Industrial Commission, approved and confirmed by the court below, that the deceased in enforcing a regulation of a private institution was acting within the scope of his duties as principal of Union Mills High School is without supporting evidence or sanction of law.

In this view of the case we think it would serve no useful purpose to remand the case for further findings of fact with respect to the relationship between Alexander School, Inc., and the deceased at the time of his fatal injury. Whether or not the deceased received from Alexander School, Inc., the equivalent of compensation in the form of living quarters, transportation facilities, or the like, is not of material significance one way or the other, in view of the clear showing that the injury which caused his untimely and tragic death arose wholly and solely out of the enforcement of a regulation of a private institution, without semblance

of connection, in fact or in law, with the performance of his duties as a high school principal employed by the State of North Carolina.

It follows from what we have said that the award below being unsupported by the requisite proof of causal relation between the deceased's employment as high school principal and his death, the judgment below is

Reversed.