MARGARET ELEANORA GALLIMORE, MOTHER; JOHN ROY GALLIMORE, FATHER, OF BONNIE LYNN GALLIMORE, DECEASED, EMPLOYEE v. MARILYN'S SHOES, EMPLOYER, BITUMINOUS CASUALTY CORP., CARRIER

No. 7618IC172

(Filed 15 September 1976)

Master and Servant § 56— workmen's compensation — shoe store employee — kidnapping in parking lot — subsequent robbery and shooting — accident arising out of and in the course of employment

Evidence that decedent was an employee of a shoe store, as part of her employment duties she made up sales tickets, bank deposits and deposit slips and she had sometimes taken money to the bank to be deposited in her employer's account, on the day in question she left work and went to her car in a parking lot at the mall where her employer's store was located, decedent's assailant knew that the owner of a certain orange Vega (decedent's vehicle) often carried large sums of money, and decedent's assailant waited for her in the parking lot, forced her into the back seat of her car, and drove her car to a wooded area where he robbed and assaulted the decedent and killed her in an ensuing struggle *is held* sufficient to support a determination by the Industrial Commission that decedent's death resulted from an accident which arose out of and in the course of her employment.

Judge CLARK dissenting.

APPEAL by defendants from the opinion and award of the North Carolina Industrial Commission filed 3 September 1975. Heard in the Court of Appeals 28 May 1976.

Plaintiffs filed a claim for benefits payable under the North Carolina Workmen's Compensation Act contending that the death of their daughter Bonnie Lynn Gallimore on 3 November 1972 was a result of an injury by accident arising out of and in the course of employment.

This cause came on for hearing at High Point, North Carolina, before Deputy Commissioner Robert W. Whitfield on 26

September 1973, and further evidence in such case was heard by Commissioner Whitfield at Raleigh, North Carolina, on 5 April 1974.

Plaintiffs offered evidence tending to show that on 3 November 1972, the date of her death, decedent was employed by Marilyn's Shoes at the Westchester Mall in High Point. As part of her employment duties she made up sales tickets, bank deposits and deposit slips, and she had sometimes taken money to the bank to be deposited in her employer's account. Decedent's mother had met decedent at the bank as well as accompanied decedent to the bank to make deposits for her employer on at least two occasions during September and October just prior to the incident. On 3 November the decedent signed out of Marilyn's Shoes at 6:00 p.m. At about 6:00 p.m., a witness, David Westley Adams, saw decedent standing with a man by her car, an orange Vega, in the public parking lot at the mall. She sat down in the driver's seat and as she prepared to start the car, the man reached across her lap. The man then got into the driver's seat and the woman moved to the back of the car where she lay down on the back seat. The man started the car and drove away from the mall at a high speed. Subsequently Darrell Lee Young pleaded guilty to the murder of decedent.

Plaintiffs offered in evidence a confession signed by Young. The court at first excluded it but later treated it as having been admitted. In the confession Young stated that he went to the mall with Jerry Wayne Allen and observed an orange Vega. Allen told him that the girl who owned the Vega kept large sums of money, and it was agreed that Young would kidnap her and carry her to a wooded area where Allen would meet with him and together they would rob her. When decedent came out to the car, Young did kidnap her and take her to the wooded area, but Allen did not meet with him as planned. Young demanded decedent's pocketbook, and she gave it to him. He told her to get out of the car, and she did so, whereupon "I called her back and went toward her an started to put my arms around her . . . an my right arm came up in front of her and she hit it at which time the .22 caliber revolver went of shooting her in the chest."

The Deputy Commissioner held that decedent's death resulted from an accident which arose out of and in the course of

her employment, and he awarded death benefits to plaintiffs. His decision was affirmed by the Full Commission. Defendants appealed.

*Harold I. Spainhour, for plaintiffs.*

*Horton, Singer & Michaels, by Walter L. Horton, Jr., for defendants.*

MARTIN, Judge.

Appellants' first assignment of error is that the Commission erred in adopting the Deputy Commissioner's findings of fact, conclusions of law and award in that the Commissioner's findings of fact 1 through 16 are insufficient as a matter of law to support the conclusion that the decedent sustained an injury arising out of and in the course of her employment.

In determining if an injury is covered under the Workmen's Compensation Act, the only injury compensable is an " . . . injury by accident arising out of and in the course of employment." G.S. 97-2(6). Our Court, in interpreting this statute, stated in *Conrad v. Foundry Company,* 198 N.C. 723, 726, 153 S.E. 266, 269 (1930) that:

> "The words 'out of' refer to the origin or cause of the accident and the words 'in the course of' to the time, place, and circumstances under which it occurred. (Citations omitted.) There must be some causal relation between the employment and the injury; but if the injury is one which, after the event, may be seen to have had its origin in the employment, it need not be shown that it is one which ought to have been foreseen or expected. (Citation omitted.)"

In determining whether the evidence in the present case is sufficient to sustain the hearing Commissioner's ruling that the accident was covered by Workmen's Compensation, it is necessary for the court to examine both facets of this two-pronged test of arising "out of" and "in the course of."

The North Carolina Supreme Court has held that whether an injury "arises out of" the employment is to be decided on the basis of the facts of each individual case and cannot be precisely defined. See *Berry v. Furniture Co.,* 232 N.C. 303, 60 S.E. 2d 97 (1950) ; *Taylor v. Wake Forest,* 228 N.C. 346, 45

S.E. 2d 387 (1947). In addition, this Court has stated that "[i]n North Carolina there is no requirement that the injury should be foreseen if it resulted from the employment nor does the employment have to be the 'sole' cause of the injury; it is sufficient if there is 'some' causal connection between the employment and the injury. *Taylor v. Twin City Club,* 260 N.C. 435, 132 S.E. 2d 865 (1963) ; *Harless v. Flynn,* 1 N.C. App. 448, 162 S.E. 2d 47 (1968)." *Robbins v. Nicholson,* 10 N.C. App. 421, 425, 179 S.E. 2d 183, 185 (1971). The North Carolina Supreme Court has similarly stated that "[w]here *any reasonable relationship* to the employment exists, or employment is a contributory cause, the court is justified in upholding the award as 'arising out of employment.' (Citations omitted.)" *Allred v. Allred-Gardner, Inc.,* 253 N.C. 554, 557, 117 S.E. 2d 476, 479 (1960) (emphasis added). In the present case, there is sufficient evidence to support the Commissioner's finding that the decedent's accident arose out of her employment. Among other facts, the Commissioner found that: The decedent's duties as an employee included making up reports from sales tickets and making up bank deposits and deposit slips. The decedent's mother had met as well as accompanied the decedent to the bank to make deposits for her employer on at least two occasions. The decedent's assailant knew that the owner of a certain orange Vega (decedent's vehicle) often carried large sums of money. The decedent's assailant waited in the decedent's car in the mall parking lot until she got off work, forced her into the back seat of the car, and then drove off with her in the back seat to a wooded area where he robbed and assaulted the decedent and killed the decedent in an ensuing struggle. An examination of other North Carolina cases with similar fact situations reveals what evidence has been held to be sufficient to support a Commission ruling that the accident arose out of the employment. In the case of *Goodwin v. Bright,* 202 N.C. 481, 163 S.E. 576 (1932), an employee had to go to the employer's place of business earlier than other employees to fire a furnace. He was shot and killed in the boiler room between 5:00 and 7:00 a.m. by an unknown robber who took his money and his automobile. The North Carolina Supreme Court held the death compensable because of the risks incidental to the employment. In addition, the Court quoted an earlier case that "[t]he mere fact that injury is the result of the willful or criminal assault of a third person does not prevent the injury from being accidental. (Citation omitted.)" *Goodwin v. Bright, supra*

at 484 and 577. Similarly, in *West v. Fertilizer Co.*, 201 N.C. 556, 160 S.E. 765 (1931), it was held that evidence tending to show that the deceased employee was killed as a result of an injury received while on duty as a night watchman in his employer's plant, and that he had been robbed by his assailant when the injury was inflicted, was sufficient to sustain the Industrial Commission's finding that the injury arose out of and in the course of the employment. In both *Goodwin* and *West*, the Court referred to the risk the employee was subjected to in his employment. In the instant case, the deceased employee, as shown by the evidence, was exposed to a risk which might have been contemplated by a reasonable person as incidental to her employment.

With respect to the requirement that the accident arise "in the course of" employment, the Court has stated that "in the course of" refers to the time, place, and circumstances. *Conrad v. Foundry Company, supra.* It has been held that the time of employment includes the working hours as well as such reasonable time as is required to pass to and from the employer's premises. *Yates v. Hajoca Corp.*, 1 N.C. App. 553, 162 S.E. 2d 119 (1968). "With respect to the place, the course of employment includes the premises of the employer." *Harless v. Flynn, supra.* Finally, with respect to circumstances, the North Carolina Supreme Court has stated that " . . . the great weight of authority holds that injuries sustained by an employee while going to or from his place of work upon premises owned or controlled by his employer are generally deemed to have arisen out of and in the course of the employment within the Workmen's Compensation Acts and are compensable, provided the employee's act involves no unreasonable delay. (Citations omitted.)" *Bass v. Mecklenburg County*, 258 N.C. 226, 232, 128 S.E. 2d 570, 574 (1962). Moreover, it has been held that where the employer provides a parking lot on its premises and permits its employees to park their cars in the lot, an injury received by an employee while walking to or from his or her car to that part of employer's premises where the employee works, is an injury arising out of and in the course of employment. See *Davis v. Devil Dog Mfg. Co.*, 249 N.C. 543, 107 S.E. 2d 102 (1959). In the instant case, the evidence shows that the initial accident leading to the chain of events resulting in decedent's death occurred while the decedent employee was going to her car in a parking lot at the mall where the employer's premises

was located. There was no evidence to the contrary that the decedent did not go straight to her car after leaving work at 6:00 p.m. Under these facts, this Court finds that the decedent's accident was in the course of her employment.

In construing Workmen's Compensation Acts, "[t]his and other courts of the United States have held that the various compensation acts should be liberally construed so that the benefits thereof should not be denied upon technical, narrow and strict interpretation. The primary consideration is compensation for injured employees." *Barbour v. State Hospital,* 213 N.C. 515, 518, 196 S.E. 812, 813 (1938). In keeping with this rule of liberal construction, this Court is of the opinion that the injury resulting in death in this case arose out of *and* in the course of the employment.

Appellants assign as a second assignment of error that the Industrial Commission erred in adopting the findings of fact, conclusions of law and award of the Deputy Commissioner and in affirming the results reached by him in that there is no competent evidence to support findings of fact 12 through 17 to the extent that such facts purport to support an inference that the decedent's death arose out of and in the course of the employment.

More specifically, the appellants argue that the Commissioner partly based his findings on evidence that was incompetent since it was hearsay. At the hearings by the Commissioner, the appellants objected to those facts which tended to connect the robbery motive of the assailant to the decedent's status as an employee of Marilyn's Shoes. The hearsay objection was directed to that portion of the assailant's confession and to his later testimony in which he stated that his co-conspirator had told him just prior to the robbery that the owner of the 1972 Vega (decedent's automobile) "was a female and that she kept large sums of money on her which prior to this incident he had been watching." The appellants argue that the Commissioner admitted this evidence and later based part of his decision on it and that without this evidence there would be insufficient competent evidence to support a ruling that the injury to the decedent arose out of and in the course of employment.

The hearsay rule has often been stated as follows: "Evidence, oral or written, is called hearsay when its probative force depends in whole or in part upon the competency and

creditability of some person other than the witness by whom it is sought to produce it. (Citations omitted.)" *Chandler v. Jones,* 173 N.C. 427, 92 S.E. 145 (1917); *King v. Bynum,* 137 N.C. 491, 495, 49 S.E. 955, 956 (1905). "Expressed differently, whenever the assertion of any person, other than that of the witness himself in his present testimony, is offered to prove the truth of the matter asserted, the evidence so offered is hearsay. If offered for any other purpose, it is not hearsay." Stansbury, N. C. Evidence, § 138 (Brandis Rev. 1973). Here, the confession and testimony by the assailant concerning his conversation with his co-conspirator was not offered to prove the truth of the fact that the decedent was a female and that she often carried large sums of money. The evidence was relevant to the decedent's assailant's state of mind and tended to show motive, and was properly admitted and relied upon by the Commissioner.

We have carefully considered the appellants' other assignments of error and find them to be without merit.

Affirmed.

Judge VAUGHN concurs in result.

Judge CLARK dissents.

Judge CLARK dissenting.

The evidence does not support the finding or conclusion of the Commission that the assault upon Bonnie Lynn Gallimore was an accident arising out of her employment. Considering all the circumstances there was not a causal connection between the conditions under which her work was performed and the resulting assault and death. See *Robbins v. Nicholson,* 281 N.C. 234, 188 S.E. 2d 350 (1972).