NORWOOD GLENN POWERS, Employee, Plaintiff v. LADY'S FUNERAL HOME, Employer and AMERICAN EMPLOYERS INSURANCE COMPANY, Carrier, Defendants

No. 8110IC502

(Filed 4 May 1982)

**Master and Servant §§ 55.6, 62— workers' compensation—journey to and from work—special errand—completion upon return to own property**

Plaintiff mortician's trip to and from his employer's funeral home when he went there at night to embalm a body constituted a special errand for his employer and therefore was in the course of his employment; however, plaintiff's special errand ended at the time he left the public street and was again physically on his own property, and injuries received by plaintiff when his car rolled down an incline and struck him as he walked toward the back door of his residence did not occur in the course of his employment, notwithstanding the funeral home did not have shower facilities for plaintiff's use and he was compelled to change clothes and wash the embalming chemical odor from his body at home.

Judge Martin (Harry C.) dissenting.

Appeal by plaintiff from opinion and award of the North Carolina Industrial Commission filed 22 January 1981. Heard in the Court of Appeals 11 January 1982.

Plaintiff, on 30 July 1978, was employed by defendant, Lady's Funeral Home, as a mortician. His duties included embalming, directing funerals, meeting families, and purchasing equipment and materials. Normal operating hours of the funeral home were from 8:20 a.m. to 5:00 p.m. Plaintiff was one of two qualified embalmers, and worked in a shift arrangement with his fellow worker by which each man was in charge of alternate 24-hour shifts. In addition to his regular duties, plaintiff was to be on call during his shift from the time when a night man, who stayed at the funeral home overnight, came on duty, until 8:00 a.m. Plaintiff was to be available in case of an emergency or death. He was required to stay at his home within hearing and reach of the telephone. After completing his emergency duties, plaintiff always returned directly home, changed clothes and showered to remove the embalming chemical odor from his body. He then awaited other calls. The funeral home did not have sleeping or shower facilities for plaintiff's use.

Plaintiff was on call the night of 29 July and the morning of 30 July 1978. Having been advised of an emergency situation,

plaintiff went to the funeral home where he embalmed a body. He returned home at approximately 2:30 a.m. in his own vehicle. He parked his car in his backyard on an incline above and facing the rear entrance of his residence. As he walked toward the back door, the car rolled down the incline and struck him, knocking him through the storm door of the house. Both of his legs were broken and one ankle was crushed.

Deputy Commissioner Lawrence B. Shupin, Jr. entered an opinion and award containing findings of fact and the conclusion that although plaintiff suffered an injury by accident, the accident did not arise out of and in the course of his employment. Plaintiff's claim was denied. The Full Commission, with one dissent, affirmed the award. Plaintiff gave notice of appeal.

*Williams, Willeford, Boger, Grady and Davis, by Brice J. Willeford, Jr., for plaintiff appellant.*

*Hedrick, Feerick, Eatman, Gardner and Kincheloe, by Hatcher Kincheloe, for defendant appellees.*

MORRIS, Chief Judge.

The sole question presented for review is whether the injury by accident sustained by plaintiff arose out of and in the course of employment. It is undisputed that plaintiff had been called from his house on the night he was injured to embalm a body. The Commission found that plaintiff's injury occurred after he left the funeral home to return to his residence. The general rule is that injuries received by an employee while travelling to or from the work place are usually not covered by this State's Workmen's Compensation Act. *Strickland v. King and Sellers v. King*, 293 N.C. 731, 239 S.E. 2d 243 (1977); *Humphrey v. Laundry*, 251 N.C. 47, 110 S.E. 2d 467 (1959). All parties accede, however, to the deputy commissioner's conclusion, supported by the facts, that the journey to and from the funeral home rose to the level of a special errand. Therefore, "[t]he 'come and go' rule, as laid down in *Hunt v. State*, 201 N.C. 707, is not applicable under the facts in this case. (Citations omitted.)" *Massey v. Board of Education*, 204 N.C. 193, 196, 167 S.E. 695, 697 (1933). Plaintiff's travel was, therefore, properly considered to have been incident to and in the course of his employment. The denial of compensation turned on the subtle determination that plaintiff's journey from his place of

employment to his home ended when "he actually left the public street or highway located adjacent to his residence and was again physically present on his property." Plaintiff was at his doorstep when injured by the runaway automobile, hence the deputy commissioner's determination and denial of compensation.

The effect of the special errand rule is to confer "portal to portal" coverage on the employee. 1 Larson, Workmen's Compensation Law § 16.10 (1978). The deputy commissioner adopted the reasoning of *Charak v. Leddy*, 23 App. Div. 2d 437, 261 N.Y. Supp. 2d 486 (1965), in which it was determined that a claimant who fell and was injured on the steps in the lobby of her apartment building as she left her apartment on a special errand for her employer had not entered the course of employment. The Court said:

> A fall in her apartment would not have given rise to any claim. If, however, in the performance of a special errand, she had fallen in the street, barely beyond the outer door of the building, the accident would have been compensable, . . .

> . . . [T]he locked inner lobby seems more nearly an adjunct of claimant's home and within its precincts than a public place or an adjunct of the street.

*Id.* at ---, 261 N.Y. Supp. 2d 487-88. Plaintiff had left the street and was on his own property when injured.

Plaintiff argues that the special errand upon which he had been dispatched did not abruptly terminate upon his return because he was compelled to change clothes and wash the embalming chemical odor from his body at home. We note the deputy commissioner's finding that "the funeral home did not have sleeping facilities available in order for the claimant to remain there at the balance of the evening following an emergency call nor did it have shower facilities for the claimant's use. . . ." Plaintiff's argument does not persuade us that the conclusion of the deputy commissioner, as upheld by the Full Commission, that claimant's accident did not arise out of and in the course of his employment, was incorrect.

For an injury to be compensable under our Workmen's Compensation Act, the claimant must prove:

(1) that the injury was caused by an accident, (2) that the injury arose out of the employment, and (3) that the injury was sustained in the course of employment, G.S. 97-2(6). Whether the claimant sustained an injury by accident is not at issue; indeed, the circumstances plainly show that an "accident", as that word is variously defined in *Gabriel v. Newton*, 227 N.C. 314, 42 S.E. 2d 96 (1947), occurred. Whether an injury arises out of the employment refers to the origin or cause of the accident. *Gallimore v. Marilyn's Shoes*, 292 N.C. 399, 233 S.E. 2d 529 (1977). It is generally said that an injury arises out of the employment "when it is a natural and probable consequence or incident of the employment and a natural result of one of its risks, so there is some causal relation between the injury and the performance of some service of the employment." *Perry v. Bakeries Co.*, 262 N.C. 272, 274, 136 S.E. 2d 643, 645 (1964). It is unnecessary, however, to make a determination as to whether any reasonable relationship to the employment exists here, because we hold that the accident did not occur in the course of plaintiff's employment. "[T]he phrases 'arising out of' and 'in the course of' are not synonymous but involve two ideas and impose a double condition, both of which must be satisfied in order to bring a case within the Act. (Citations omitted.)" *Sweatt v. Board of Education*, 237 N.C. 653, 657, 75 S.E. 2d 738, 742 (1953).

Whether an injury occurs in the course of the employment depends upon the time, place and circumstances of the accident. *Bartlett v. Duke University*, 284 N.C. 230, 200 S.E. 2d 193 (1973). Plaintiff's travel from his home to his place of employment would normally be covered under the going and coming rule; yet, because of the unusual hour and urgency of his mission, the special errand rule compels us to regard the travel as an integral part of the service performed. See *Massey v. Board of Education*, supra. The journey ended when plaintiff returned to his property, however, and the deputy commissioner, with proper regard for the "portal to portal" nature of the special errand rule, accurately found plaintiff to be outside the scope of his employment when misfortune befell him. *Charak v. Leddy*, supra. As defendant points out in his brief, the time of the accident and the circumstances surrounding it would tend to put the accident within the course of employment by virtue of the special nature of the trip to the funeral home. Plaintiff was not, however, injured at a

place of employment, even as that aspect of "course of employment" is viewed under the special errand rule. Our search of the authority in this and other jurisdictions convinces us that the special errand exception to the "coming and going" rule is no more than that— an exception to the general rule that accidents occurring while the employee is in transit to and from work is not compensable. Plaintiff crossed the threshold of his own domain when he left the roadway and entered the driveway behind his house. The special errand doctrine does not transform all employees covered by the Workmen's Compensation Act into absolute insurers of the safety of employees called away on some special mission.

Abundant authority has been promulgated under the personal comfort doctrine to the effect that the course of employment embraces activities such as changing clothes, washing, bathing, and caring for one's appearance generally. Yet injury on the way to or while engaged in such activity has only been compensated when the distress suffered occurred on the employer's premises. Plaintiff argues, however, not that a shower and change of clothes was for his personal comfort and wellbeing, but that its purpose was to comply with one of the conditions of his employment, i.e., that he be presentable to an aggrieved family when needed. We hold that plaintiff's appearance in this case was not so intimately related to his employment as to be a part of it. Were we to hold otherwise, any employee in covered employment whose occupation requires that he deal with the public could claim compensation if he suffered an injury at home while bathing or grooming for work.

We deem that there is competent evidence to support the facts found, and that the findings fully and fairly support the conclusion of law and denial of compensation. The deputy commissioner's award is, therefore,

Affirmed.

Judge VAUGHN concurs.

Judge MARTIN (Harry C.) dissents.

Judge MARTIN (Harry C.) dissenting.

The majority concludes that claimant's injury did not occur in the course of his employment. The majority concedes that claimant was on a special errand for his employer in the journey to and from the funeral home, and therefore the usual "come and go" rule is not applicable to this case. It is also conceded that the special errand of claimant in this case was "an integral part of the service performed." The requirement that the injury arise out of the employment is thereby satisfied, there being a causal relation between the injury and the performance of a service of the employment, *i.e.*, the special errand for the employer. *Perry v. Bakeries Co.*, 262 N.C. 272, 136 S.E. 2d 643 (1964).

The decision of the Commission is upheld upon the simple determination that the special errand ended when claimant left the public street and was again physically upon his own property. This holding defeats the purpose of the special errand rule, which is to allow coverage of the employee from "portal to portal." 1 A. Larson, The Law of Workmen's Compensation § 16.10 (1978). I find the special errand did not end until claimant left the area of the risk created by the special errand. In any journey by automobile, two of its most dangerous aspects are entering the vehicle and exiting from it. I find *Charak v. Leddy*, 23 A.D. 2d 437, 261 N.Y.S. 2d 486 (1965), entirely distinguishable from this case. In *Charak*, claimant was still within her apartment building when she was injured. She had not entered into the area of risk arising out of her employment. She was injured while doing what any other resident of the building might have done. Our claimant, to the contrary, was exiting the car and returning to his doorway, still performing an integral part of the special errand for his employer.

Jurisdictions as diverse as California and New Hampshire have allowed recovery under analogous circumstances. In *Heinz v. Concord U. Sch. Dist.*, 117 N.H. 214, 371 A. 2d 1161 (1977), claimant was a teacher. On his way home to change clothes in order to return to school to chaperone an authorized school dance, he was killed in a motorcycle accident. He was not obligated to chaperone the dance, but was expected to give fully of his services and participate to a reasonable extent in school activities. The New Hampshire court held the death arose out of and in the course of

claimant's employment. The chaperoning duties were in the nature of a special duty or errand and subjected claimant to special travel risks. The cause of the death could properly be considered a hazard of the employment.

*Safeway Stores, Inc. v. Workers' Comp. A. Bd.,* 104 Cal. App. 3d 528, 163 Cal. Rptr. 750 (1980), involved a special errand or mission case with facts closely resembling those in the case sub judice. In *Safeway,* claimant was required to work well beyond his ordinary hours to aid in the preparation of an inventory. He returned to his home about 5:30 a.m. and was injured when he was attacked by an unknown assailant as he got out of his car to enter his house. The employer argued that the injury did not arise out of or in the course of the employment. The California court held that claimant was on a special errand for his employer in his return home from the extended workday. Claimant's entire duty was at the employer's request and satisfied an important and out-of-the-ordinary business need. The journey home was an essential part of the special service claimant was called upon to perform for the benefit of his employer. Safeway further contended that the return journey was completed before the assault. The court concluded that the reasoning in *Charak* supported recovery for claimant, who had not entered the safety of his house, as the claimant in *Charak* had not left the safety and security of her apartment building when she was injured.

Claimant Powers was engaged in a "special errand" and had not entered the safety and security of his house when he was injured. He was still exposed to the risks arising out of his employment. Further, it is to be noted that his injury was the result of his being struck by the automobile he had just left and which he was required to use in order to perform the services for his employer. No outside element participated in causing the injury, as occurred in *Safeway.*

The majority's rule, that a special errand ends when the employee is again physically present upon his property, does have the attribute of certainty. But, it is feared that certainty is achieved at the expense of justice. Many fact situations are conceivable where a claimant is still subject to risks from his employment after he is on his own property while on a special errand. It could be several miles from the beginning of his property to his

house, for example. It is submitted that a "bright line" rule should not be adopted to determine when all special errands end, but rather, each should be determined upon its particular fact situation. *See Berry v. Furniture Co.,* 232 N.C. 303, 60 S.E. 2d 97 (1950); *Harden v. Furniture Co.,* 199 N.C. 733, 155 S.E. 728 (1930); *Gallimore v. Marilyn's Shoes,* 30 N.C. App. 628, 228 S.E. 2d 39 (1976), *rev'd on other grounds,* 292 N.C. 399, 233 S.E. 2d 529 (1977).

When it is established that a claimant is on a special errand for his employer, the declared policy of the state requires a liberal construction in favor of the employee in determining whether the accident arises out of and in the course of the employment. *Stevenson v. City of Durham,* 281 N.C. 300, 188 S.E. 2d 281 (1972); *Petty v. Transport, Inc.,* 276 N.C. 417, 173 S.E. 2d 321 (1970); *Gallimore, supra.* The narrow, restrictive rule adopted by the majority contravenes this policy.

The proper rule of law to apply to the discrete fact situations is not "did the accident occur on the claimant's own premises." Rather, an accident arises out of employment when it occurs in the course of the employment and the conditions or obligations of the employment put the claimant in the position or at the place where the accident occurs. *Larson, supra,* § 6.50. Claimant was struck by the car near his door because the obligations of his employment, the special errand, required him to be at that place when the accident occurred. Where the employment requires travel, the hazards of the route become the hazards of the employment. *Hinkle v. Lexington,* 239 N.C. 105, 79 S.E. 2d 220 (1953). Such is the case here. I vote to reverse the order of the Commission and remand for the determination of an appropriate award for claimant.