WARREN N. POLLOCK, Employee, and BARBARA S. BECKWITH, Widow, BARBARA S. BECKWITH, Guardian Ad Litem for MARNIE BECKWITH AND KATIE BECKWITH, Minor Children of PETER O. BECKWITH, Deceased, Employee, Plaintiffs v. REEVES BROTHERS, INC., Employer, LIBERTY MUTUAL INSURANCE COMPANY, Carrier, Defendants

No. 534A84

(Filed 2 April 1985)

1. **Master and Servant § 55.4— workers' compensation—crash of airplane owned by superior—injuries arising out of and in course of employment**

A conclusion by the Industrial Commission that an employee suffered injuries by accident arising out of and in the course of his employment when he was killed in an airplane crash while returning from Georgia after having flown a Cessna there to pick up his superior who had flown a Piper Aztec there to have new FAA numbers painted on it was supported by evidence and findings to the effect that the superior owned the two airplanes and used them primarily in the course of the employer's business; the employer paid the superior $2,500 annually for the use of the Cessna and paid for all gasoline the plane used during business trips; the employer paid for the fuel used in the two planes on the day of the crash; the superior acquired the twin-engine Aztec plane so that he could more safely travel the long distances among several of the employer's operating facilities; the numbers to be painted on the Aztec had been assigned to the plane by the FAA and were required by law to be displayed on the aircraft soon after assignment; the superior directed the employee to make the trip with him; the trip was scheduled and made during regular office hours; and the employer paid the employee's salary in full for the day of the trip.

2. **Master and Servant §§ 56, 60— workers' compensation—performing duty at direction of superior—special errand rule**

Where the evidence showed that an employee's superior directed the employee to fly an airplane to Georgia to pick up the superior who flew a second airplane there to have FAA numbers painted on it, the employee was entitled to recover workers' compensation for injuries suffered in a plane crash during the return trip under the principle that when a superior directs a subordinate employee to go on an errand or perform some duty beyond his normal duties, an injury sustained in the course of that task is compensable. The employee's acquiescence in his superior's directive to fly with him to Georgia also falls under the "special errand" rule which entitles an employee to compensation if he is injured while engaged in a special duty or errand for his employer.

3. **Master and Servant § 60.1— workers' compensation—dual purpose rule**

Assuming that an employee had personal business to conduct in Georgia when he flew an airplane to Georgia to pick up a superior who had flown a second airplane there to have FAA numbers painted on it, an award of workers' compensation benefits for injuries suffered by the employee in a plane crash on the return trip would be justified under the dual purpose rule.

**4. Master and Servant §§ 49.1, 61 — workers' compensation — services for independent contractor — acting at direction of superior**

An executive of defendant employer who owned two airplanes involved in a trip to Georgia to have FAA numbers painted on one of the planes was acting as an employee and not an independent contractor during the trip where the numbers were to be painted on a plane used primarily for business purposes; the trip was scheduled and made during regular office hours; the employer paid for the fuel used on the trip; and the employer paid the executive's salary in full for the day of the trip. Even if the executive was an independent contractor during the trip, an employee who flew one of the planes to Georgia to pick up the executive was entitled to recover workers' compensation for injuries suffered in a plane crash on the return trip where the evidence established that the employee agreed to accompany the executive because of the executive's apparent authority to direct the employee to accompany him on a trip relating to flight readiness of a plane which the employee assumed would be used for the employer's purposes.

APPEAL of right from the decision of a divided panel of the Court of Appeals, reported at 70 N.C. App. 199, 319 S.E. 2d 286 (1984), reversing the opinion and award of the Industrial Commission filed 13 April 1983. Heard in the Supreme Court 4 February 1985.

*Caudle & Spears, by Lloyd C. Caudle and Richard S. Guy, for plaintiff appellant Barbara S. Beckwith.*

*Hedrick, Feerick, Eatman, Gardner & Kincheloe, by Philip R. Hedrick and Martha W. Surles, for defendant appellees.*

MARTIN, Justice.

The issue dispositive of this action for workers' compensation benefits is whether Peter O. Beckwith (Beckwith) suffered injuries by accident arising out of and in the course of his employment with defendant Reeves Brothers, Inc. (Reeves). We find that the accident did arise out of and in the course of Beckwith's employment, and therefore we reverse the decision of the Court of Appeals.

Warren N. Pollock (Pollock) was injured and Peter O. Beckwith was killed when a plane owned and piloted by Pollock crashed en route from Commerce, Georgia to Charlotte, North Carolina. The two men had flown to Commerce in separate private airplanes so that they could return to North Carolina in one plane while Federal Aviation Administration (FAA) registration numbers were painted on the other plane.

A deputy commissioner of the Industrial Commission made the following findings of fact which were subsequently adopted by the full Commission:

1. Warren N. Pollock (Pollock) was on 9 March 1982 and is still first vice president of defendant employer and president of defendant employer's Curon Division which is the North Carolina Division of the company. The deceased employee, Peter O. Beckwith (Beckwith), was manager of defendant employer's foam operation and vice president of the company. He worked directly under Pollock. Defendant employer manufactured various items including polyurethane foam. Defendant employer's North Carolina operations were located in Cornelius and the company had operations in various parts of the United States and in Canada.

2. Pollock owned and had owned since 1978 a Cessna 210 which was a single-engine aircraft. Pollock was a pilot and would pilot the plane for pleasure and for business purposes when necessary. Defendant employer paid Pollock $2,500.00 per year plus all gasoline for the use of the 210. Pollock maintained and hangared such aircraft at his own expense.

3. Sometime prior to March 1982 Pollock purchased a Piper Aztec which is a twin-engine aircraft. Pollock put the aircraft in the name of a partnership consisting of he and his wife. Pollock intended to sell his 210 aircraft and use the Aztec for company business purposes as well as for pleasure. The Aztec had a greater flight range and could be used for flights to Canada and other more distant places. The Aztec was maintained and hangared at Pollock's expense or at the expense of the partnership consisting of he and his wife.

4. Approximately two weeks prior to 9 March 1982 the Federal Aviation Authority assigned new numbers to Pollock's Aztec. Pollock desired to have the new numbers painted on the aircraft and decided to fly it to Commerce, Georgia, to have the work done on the plane.

5. Beckwith was also an airplane pilot and his pilot's lessons had been paid for by defendant employer when Beckwith was working for such defendant in Canada prior to 1981. Beckwith would from time to time make business associated

flights in Pollock's aircraft and on occasions he would accompany Pollock on business trips by airplane. Beckwith on occasions also leased an aircraft for pleasure trips.

6. Pollock and Beckwith had a busy business schedule during the week of 9 March 1982. However, Pollock decided to work in between his business schedule a trip to get the numbers painted on his Aztec in Commerce, Georgia, or to at least leave the plane in Commerce to have the painting done. He decided to work in a trip to carry the Aztec to Commerce around his company work schedule on the morning of 9 March 1982. Being aware that Beckwith was a pilot, Pollock asked Beckwith to fly the 210 aircraft to Commerce while Pollock piloted the Aztec to Commerce. After arriving at such destination Pollock would leave the Aztec and return with Beckwith in the 210 to North Carolina where they would be able to continue with their business during the day and the ensuing week. Therefore on 8 March 1982 Pollock asked Beckwith to accompany him on such trip to Commerce, Georgia, on the morning of 9 March 1982. Beckwith stated that he preferred to take a practice flight in the 210 on 8 March 1982 before undertaking the flight to Georgia on the next day. Therefore, on the afternoon of 8 March 1982 Beckwith and Pollock did take a practice flight in the 210.

7. On the morning of 9 March 1982 Beckwith and Pollock left North Carolina and flew to Commerce, Georgia, with Pollock flying his Aztec and Beckwith flying the 210. After arriving at Commerce they left the Aztec to have the new letters painted on such plane. They then checked the 210 and left for the return flight to North Carolina. Upon obtaining an altitude of approximately 2,500 feet the engine quit. Pollock attempted to turn the plane around and go back to Commerce but was unable to do so. He then attempted to make an emergency landing in a field but hit trees going into the field and the plane crashed. Pollock and Beckwith had left North Carolina at approximately 8:00 a.m. and the return flight commenced at approximately 10:00 a.m. with the expectation of being back in their office between 11:00 a.m. and 12:00 noon.

After the full Commission reviewed the deputy commissioner's order, it made the following additional findings of fact:

8. The gasoline for the flight from North Carolina to Georgia was purchased by Pollock by use of the employer's credit card. Such flight was for the purpose of taking Pollock's Aztec to Georgia in order to have the new numbers painted on the plane. Neither Pollock nor Beckwith had any personal business to transact in Georgia, and the sole purpose of the trip was a maintenance tank [task] connected with operation of the Aztec. Pollock paid for the maintenance of both aircraft from his own funds, including the funds received from the employer for use of his planes as set out in Finding of Fact 2.

9. At the time complained of, Pollock and Beckwith were engaged in the discharge of a function which was calculated [to] further indirectly the employer's business. The accidents sustained by them arose out of and in the course of their employment.

10. Barbara S. Beckwith married Peter O. Beckwith on August 5, 1961 and, at the time complained of, was living with and dependent upon him for support. The two minors named in the caption were minor children of the deceased on the date of his death and the widow and said minors are entitled to all benefits due by reason of his death.

Based upon the foregoing findings the full Commission concluded as a matter of law that:

1. On the occasion complained of, the employees sustained an injury by accident arising out of and in the course of their employment. G.S. 97-2(6); *Clark v. Burton Lines*, 272 N.C. 433; see also *Marks' Dependents v. Gray*, 167 N.E. 181.

2. Barbara S. Beckwith and her two minor children were the sole whole dependents of Beckwith and are entitled to all compensation due by reason of his death. G.S. 97-38.

The Commission thereupon awarded workers' compensation benefits to both plaintiffs. Defendants appealed to the Court of Appeals where a divided panel reversed the full Commission's opinion and award. Plaintiff Beckwith appeals the decision of the Court of Appeals pursuant to N.C.G.S. 7A-30(2).[1]

---

1. Pollock has voluntarily dismissed his appeal to this Court.

As this Court stated in *Hoffman v. Truck Lines, Inc.*, 306 N.C. 502, 506, 293 S.E. 2d 807, 809-10 (1982), it is a well settled rule that

> "[w]hether an injury arose out of and in the course of employment is a mixed question of law and fact, and where there is evidence to support the Commissioner's findings in this regard, we are bound by those findings." *Barham v. Food World*, 300 N.C. 329, 331, 266 S.E. 2d 676, 678 (1980). An appellate court is, therefore, justified in upholding a compensation award if the accident is "fairly traceable to the employment as a contributing cause" or if "any reasonable relationship to employment exists." *Kiger v. Service Co.*, 260 N.C. 760, 762, 133 S.E. 2d 702, 704 (1963). In other words, compensability of a claim basically turns upon whether or not the employee was acting for the benefit of his employer "to any appreciable extent" when the accident occurred. *Guest v. Iron & Metal Co.*, 241 N.C. 448, 452, 85 S.E. 2d 596, 600 (1955). Such a determination depends largely upon the unique facts of each particular case, and, in close cases, the benefit of the doubt concerning this issue should be given to the employee in accordance with the established policy of liberal construction and application of the Workers' Compensation Act. *See Watkins v. City of Wilmington*, 290 N.C. 276, 225 S.E. 2d 577 (1976); *Harden v. Furniture Co.*, 199 N.C. 733, 155 S.E. 728 (1930). With these principles in mind, we proceed to examine the individual merits of the case presently before us.

[1] Defendants except only to finding of fact 9, a portion of finding of fact 8, and conclusion of law 1. Therefore we are bound by all other findings of fact and need determine only if those findings to which exception was taken are supported by competent evidence of record and, if so, whether the Commission's findings of fact support its conclusions of law. Based on our review of the record and the able arguments of counsel, we have concluded that the findings of fact made by the Industrial Commission to which defendants except are supported by competent evidence and that its conclusions of law are supported by its findings of fact. We therefore reverse the Court of Appeals and remand the case to that court for further remand to the Industrial Commission for reinstatement of the opinion and award of the full Commission.

Pollock v. Reeves Bros., Inc.

Evidence supporting the Commission's finding of fact 9 that "[a]t the time [of the crash] Pollock and Beckwith were engaged in the discharge of a function which was calculated [to] further indirectly the employer's business [and therefore] [t]he accidents sustained by them arose out of and in the course of their employment" includes the following: Pollock testified that although he owned the planes that he and Beckwith flew on the day of the accident, they were used primarily by Pollock and other Reeves employees in the course of business for Reeves. Reeves paid Pollock $2,500 annually for the use of the Cessna and also paid for all gasoline the plane used during business trips. Reeves paid for the fuel used in the two planes on the day of the crash. Pollock acquired the twin-engine Aztec plane on 3 November 1981 so that he could more safely travel the long distances among several of Reeves' operating facilities. The numbers that Pollock had painted on the Aztec had been assigned to the plane by the FAA approximately two weeks before the crash and were required by law to be displayed on the aircraft soon after assignment. Pollock wanted to have these numbers painted on the plane as soon as possible so that the plane would be fully available to Reeves for business trips. Pollock scheduled the flights to Georgia during the morning of Tuesday, 9 March 1982, at about 8:00 a.m., the usual hour for the beginning of his and Beckwith's workday for Reeves. The trip was intended to be a short one so that both men would be able to return to the Reeves operations in North Carolina later that morning to prepare for a business meeting. There is no evidence that Pollock or Beckwith carried out any business in Commerce aside from arranging for the numbers to be painted on the plane.[2] Both men were paid by Reeves for a full day's work for the day of the plane crash.

Finding of fact 6 reads in part: "After arriving at such destination Pollock would leave the Aztec and return with Beckwith in the 210 to North Carolina where they would be able to continue with their business during the day and the ensuing

2. Defendants except to only that part of finding of fact 8 which states: "[n]either Pollock nor Beckwith had any personal business to transact in Georgia." Because we have determined that there is competent evidence supporting the Commission's finding of fact 9 and there is no evidence that the two men conducted any personal business in Commerce, we have determined that finding of fact 8 is also supported by the record.

week." Defendants did not except to this finding of fact, therefore it is deemed to be supported by competent evidence and it is binding upon appeal. *Schloss v. Jamison*, 258 N.C. 271, 128 S.E. 2d 590 (1962). This finding of fact is sufficient to support the conclusion that the purpose of the trip was related to the business of Reeves and that Pollock and Beckwith were acting in the course of their employment at the time of the accident. The accident was "fairly traceable to the employment as a contributing cause" and the trip had some reasonable relationship to Beckwith's employment with Reeves; thus Beckwith was acting for the benefit of Reeves to an appreciable extent. *Hoffman v. Truck Lines, Inc.*, 306 N.C. 502, 506, 293 S.E. 2d 807, 810. We hold that the Commission's findings of fact support its conclusion of law that "[o]n the occasion complained of, [Beckwith] suffered an injury by accident arising out of and in the course of his employment."

[2] We further note that Pollock testified that he directed Beckwith to make the trip with him. Pollock was Beckwith's immediate superior at Reeves, and there is no evidence that Beckwith agreed to make the trip as a personal favor rather than as part of his duties as an employee of Reeves. When asked why Mr. Beckwith was going with him to Commerce, Pollock replied, "Well first Mr. Beckwith was a pilot and he could fly the 210. He was the only one really qualified in the 210 in the Reeves operation." Pollock also testified that the purpose in having Beckwith fly the Cessna to Georgia was "[s]o that I could have a way to get back from Commerce, Georgia." Beckwith is thus entitled to recover under the workers' compensation principle that when a superior directs a subordinate employee to go on an errand or perform some duty beyond his normal duties, an injury sustained in the course of that task is compensable. 1A A. Larson, *The Law of Workmen's Compensation* § 27.40 (1982); *Stewart v. Dept. of Corrections*, 29 N.C. App. 735, 225 S.E. 2d 336 (1976). *See also Biggs v. United States Fire Insurance Company*, 611 S.W. 2d 624 (Tex. 1981). Beckwith's acquiescence to Pollock's directive to fly with him to Georgia also falls under the "special errand" rule, which provides that an employee is entitled to benefits if he is injured while engaged in a special duty or errand for his employer. *See Powers v. Lady's Funeral Home*, 57 N.C. App. 25, 30-32, 290 S.E. 2d 720, 723-25 (Martin, J., dissenting), *rev'd*, 306 N.C. 728, 295 S.E. 2d 473 (1982); *Felton v. Hospital Guild*, 57 N.C. App. 33, 291

S.E. 2d 158, *aff'd*, 307 N.C. 121, 296 S.E. 2d 297 (1982); *Stover v. Midwest Tank*, 87 Mich. App. 452, 275 N.W. 2d 15 (1978).

[3]    The facts at bar also allow Beckwith to recover under the so-called dual purpose rule. In *Humphrey v. Laundry*, 251 N.C. 47, 51, 110 S.E. 2d 467, 470 (1959), this Court quoted Chief Justice Cardozo's statement of the rule as enunciated in *Matter of Marks v. Gray*, 251 N.Y. 90, 167 N.E. 181 (1929):

> "The test in brief is this: If the work of the employee creates the necessity for travel, such is in the course of his employment, though he is serving at the same time some purpose of his own. . . . If however, the work has had no part in creating the necessity for travel, if the journey would have gone forward though the business errand had been dropped, and would have been canceled upon failure of the private purpose, though the business errand was undone, the travel was then personal, and personal the risk."

In the present case the nature of Pollock's position with Reeves required that current FAA numbers be displayed on the planes he used for business travel on behalf of Reeves; thus his "work . . . create[d] the necessity for travel [to Georgia]" and was therefore "in the course of his employment." The nature of Beckwith's position, as subordinate to Pollock, made him agree to accompany Pollock on this business trip. There is no evidence that Beckwith had any personal business to conduct in Commerce, but even assuming arguendo that he did, his award of workers' compensation benefits would also be justified under the dual purpose rule. *Felton v. Hospital Guild*, 57 N.C. App. 33, 291 S.E. 2d 158, *aff'd*, 307 N.C. 121, 296 S.E. 2d 297.

[4]    We do not agree with defendants' argument that because Pollock owned the airplanes involved here he was an independent contractor whose trip to have numbers painted on the plane was merely one of his personal responsibilities as owner of the plane. *See Hoffman v. Truck Lines, Inc.*, 306 N.C. 502, 293 S.E. 2d 807; *Church v. G.G. Parsons Trucking Co.*, 62 N.C. App. 121, 302 S.E. 2d 295, *disc. rev. denied*, 309 N.C. 191 (1983); *Thompson v. Transport Co.*, 32 N.C. App. 693, 236 S.E. 2d 312 (1977); *Duetsch v. E.L. Murphy Trucking Co.*, 307 Minn. 271, 239 N.W. 2d 462 (1976); *Texas General Indemnity Company v. Bottom*, 365 S.W. 2d 350 (Tex. 1963). In *Hoffman v. Truck Lines*, we remarked that one

who owns a vehicle leased to his employer is an independent contractor as owner-lessor, but when operating the vehicle in service of his employer, he is an employee. "[The] actual circumstances surrounding the task undertaken by plaintiff determined whether he was working for himself or the [employer] at any given time and thus whether he was, in fact, covered under the [Workers' Compensation] Act." 306 N.C. at 506-07, 293 S.E. 2d at 810. In the present case, given that the trip was scheduled and made during regular office hours, that Reeves paid for the fuel used on the trip, that Reeves paid Pollock's salary in full for the day of the trip, that as an executive Pollock's use of his time as an employee of Reeves was discretionary, and that the trip was for the limited and unusual task of having new numbers painted on a plane used primarily for business purposes, we hold that Pollock was acting as an employee of Reeves during the trip in which the crash occurred.

Even if we were to assume that Pollock was wearing his independent contractor hat during the trip, this would not disqualify Beckwith's widow and children from entitlement to workers' compensation benefits. As stated above, there is no evidence supporting a contention that Beckwith accompanied Pollock in any capacity other than as a subordinate employee acquiescing in a directive of his superior. Pollock chose Beckwith to accompany him because Beckwith was the only Reeves employee who could pilot the Cessna. Reeves paid both Pollock's and Beckwith's salaries for the day of the accident. Mrs. Beckwith testified that the evening before the trip to Georgia Mr. Beckwith told her "that he was going on a business trip with Mr. Pollock" the next morning. Mr. Pollock testified that the trip from Georgia to North Carolina was made so that he could return to the Reeves plant to prepare for a business meeting. Mr. Beckwith never piloted the Cessna 210 for pleasure trips. There is certainly competent evidence to establish that Mr. Beckwith agreed to accompany Pollock because of Pollock's apparent authority to direct Beckwith to accompany him on a trip relating to the flight readiness of a plane which Beckwith assumed would be used for corporate purposes. We agree with the Court of Appeals dissent that "[i]n these circumstances Beckwith should not be compelled to determine, at his peril, whether the requested activity would place him beyond the ambit of the Workers' Compensation Act."

*Compare Burnett v. Paint Co.,* 216 N.C. 204, 4 S.E. 2d 507 (1939) (no evidence that employee's mowing of lawn at supervisor's private residence was for benefit of employer company); *Hales v. Construction Co.,* 5 N.C. App. 564, 169 S.E. 2d 24 (1969) (supervisor had no apparent authority to order employee to go work on supervisor's private dwelling).

The Court of Appeals erred in reversing and remanding the opinion and award of the Industrial Commission. The decision of the Court of Appeals is reversed and this case is remanded to the Court of Appeals for further remand to the Industrial Commission for reinstatement of the award of workers' compensation benefits to Barbara S. Beckwith as widow of Peter O. Beckwith and as guardian ad litem of Peter Beckwith's two children.

Reversed and remanded.