**James T. GUPTON, Ada Gattis Gupton, Nina G. Hill, Administratrix of the Estate of Georgia Q. Gupton, Appellants,**

v.

**UNITED STATES of America, Appellee.**

No. 85–2235.

United States Court of Appeals, Fourth Circuit.

Argued June 4, 1986.

Decided Sept. 4, 1986.

Dale P. Johnson (Warrick, Johnson & Parsons, P.A., Clinton, N.C., on brief) for appellants.

Samuel T. Currin, U.S. Atty. for appellee.

Before JAMES DICKSON PHILLIPS and CHAPMAN, Circuit Judges, and BUTZNER, Senior Circuit Judge.

CHAPMAN, Circuit Judge:

This case arises out of a collision between a U–Haul truck driven by the defendant, Marine Sergeant William Jones, and the plaintiffs' automobile. The sole issue on appeal is whether the district court erred in holding that Jones was not acting within the scope of his employment at the time of the accident, thus absolving the United States from liability under the Federal Torts Claims Act, 28 U.S.C. § 2672 *et seq.* (1982). Finding no error, we affirm.

## I

Sergeant Jones had spent the months prior to the accident temporarily stationed on Okinawa. His permanent duty station was Camp Lejeune, North Carolina, where his family lived. Upon returning from overseas, Jones was transferred to Albany, Georgia, and given thirty-five days to report to Albany for duty. Thirty of the thirty-five days were annual leave. During this thirty-five day period, Jones was not subject to military call except in the event of gravest national emergency. His only obligations were to report for duty by January 25, 1983 and to keep his superiors informed of any change of address in the meantime.

Jones had the option of having his possessions moved by commercial movers at government expense or participating in the Marine Corps "Self-Move Program". This program was instituted in 1980 to provide servicemen an alternative to commercial movers, and to save the United States money. A serviceman who participates in the program earns "incentive pay".

A transportation officer (TMO) and six other Marines at Camp Lejeune were assigned to administer the Self-Move Program. The TMO arranged for the rental of the U–Haul truck and trailer at the designated U–Haul dealer in Jacksonville, North Carolina, and prepared the necessary paper work. He weighed the vehicles on the Camp Lejeune scales and saw that the weight certificates were properly prepared and certified. Marine Corps packers provided Jones with all of the cartons, tape, wrapping paper, and other moving supplies that he needed, and they helped him pack. The TMO personally conducted a safety inspection of the rig, once loaded, and told Jones where to return the rig in Albany. Jones' dependents were paid a monetary allowance, in lieu of free government transportation, for traveling in private vehicles. Jones was paid twenty-five cents per mile based on the distance of a one-way trip from Camp Lejeune to Albany and Jones was also given "incentive pay" from which twenty percent was withheld for federal income tax. Jones planned to move in two trips and he hired a friend to help him move. The cost of the second trip and the wages he agreed to pay his friend were to be borne by Jones personally.

Sergeant Jones left Camp Lejeune for Georgia on January 14, 1983 and later that day the collision occurred in Sampson County, North Carolina at the intersection of U.S. Highway 41 and U.S. Highway 421. It appears that Sergeant Jones was at fault. An eyewitness reported that Jones went through a stop sign at the intersection traveling at approximately 45 m.p.h., and collided with the Gupton vehicle. Jones subsequently pleaded guilty in state court to unintentional death by motor vehicle and failure to yield right-of-way at a stop sign. As a result of the collision, Sergeant Jones, James Gupton, and Ada Gupton were injured and required hospitalization. Georgia Q. Gupton died from injuries suffered in the accident.

The plaintiffs filed this action pursuant to the Federal Tort Claims Act, 28 U.S.C. § 2672 *et seq.*, in the United States District Court for the Eastern District of North Carolina. They allege that Jones was acting in the scope of his employment at the time of the collision and that the United States is liable for the injuries caused by Jones' negligence. The facts were not in dispute, and both sides moved for summary judgment. The district court held that Jones was not acting within the scope of his employment and entered judgment for the United States. The plaintiffs have appealed.

## II

The Federal Tort Claims Act follows the rule of *lex loci delicti* and since the accident occurred in North Carolina, the North Carolina law of *respondeat superior* controls. *James v. United States*, 467 F.2d 832 (4th Cir.1972). Under North Carolina law, in order to glean the benefits of *respondeat superior*, a plaintiff must prove: (1) the fact of employment, and (2) that the employee, at the time of the injury, was engaged in the master's business. *Lind-*

sey v. Leonard, 235 N.C. 100, 68 S.E.2d 852 (1952).

■ Since the Self-Move Program is relatively new, we have found no North Carolina cases precisely on point. This court has, however, had the opportunity to apply North Carolina law in similar cases in which servicemen were alleged to have negligently caused injury to third parties. In *United States v. Eleazer*, 177 F.2d 914 (4th Cir.1949), the plaintiff sued for injuries received in an accident with a United States Marine. The Marine had been transferred from Cherry Point, North Carolina to Corpus Christi, Texas and had been given two weeks to report to his new duty station. The Marine decided to drive with his sister to Raleigh, North Carolina, then to his home in Atlanta, Georgia, for a visit, and finally to Corpus Christi. The accident occurred while the Marine and his sister were in route to Raleigh. This court held that the Marine was not acting within the scope of his employment at the time of the accident. Even though the Marine had been ordered to travel to Corpus Christi, and even though the government was reimbursing him for travel expenses, the court held that in the absence of the right and power to command or direct the employee in the performance of the act or omission charged, liability cannot be imputed to the employer. This holding was reaffirmed more recently by this court in the case of *James v. United States, supra.*

From the facts of this case, it is apparent that the United States exercises significant control over participants in the Self-Move Program. The plaintiffs argue that this control is sufficient to hold the United States liable under the North Carolina doctrine of *respondeat superior.* In effect, the plaintiffs contend that the United States performed every task necessary to move Sergeant Jones except drive the truck, and that it hired him to do that.

In support of their claim that the North Carolina courts would hold the United States liable, the plaintiffs cite North Carolina cases holding an employer liable to his employee under the North Carolina

Workman's Compensation Act, N.C.G.S. § 97–1, *et seq.* We find this authority to be unpersuasive. Workman's compensation law in North Carolina differs from the law of *respondeat superior.* There is an established policy of liberal construction in the Workman's Compensation Act to insure an award of compensation to the employee whenever the liability of the employer is in question. North Carolina Workman's Compensation Law imposes liability upon an employer if the employee was acting for the benefit of the employer to any appreciable extent when the accident occurred. *Hoffman v. Ryder Truck Lines, Inc.*, 306 N.C. 502, 293 S.E.2d 807 (1982). The element of control, which is central to *respondeat superior,* is unnecessary for liability under the North Carolina Workman's Compensation Act.

At oral argument, appellants presented for the first time the argument that North Carolina had adopted a "dual-purpose" rule and that if an employee was engaged in the discharge of an act which was primarily for his benefit, but such act was calculated only indirectly to further his employer's business, then he was acting for the employer so as to make the employer liable. As support, he cites *Pollock v. Reeves Bros., Inc.*, 313 N.C. 287, 328 S.E.2d 282 (1985). *Pollock* is also a workmen's compensation case, and the "dual purpose" rule or benefit analysis approach has not been applied by the North Carolina courts to establish liability of an employer to a third party for an employee's negligence.

*Eleazer* requires that we look at the act or omission which is alleged to be the proximate cause of the injuries sustained, and determine if the United States had sufficient control over that act or omission to hold it liable under the doctrine of *respondeat superior.* The negligence alleged in this case is unrelated to the way that Jones' possessions were packed, the way the truck was loaded, or the condition of the truck. The control exercised by the government over the Self-Move Program affected each of these areas, but such control did not extend to the acts or omissions

complained of in this lawsuit. The government did not have any control over the truck or Jones once it rolled out of Camp Lejeune. The Self-Move Program obviously contemplated that Jones would move himself in one trip. It did not require him to move in one trip. Jones planned two trips and as far as the government was concerned, he could have made more. So long as Jones reported for duty on or before January 25, 1983, the government had neither interest in, nor control over, the particulars of his move. We hold, therefore, that the United States is not liable for injuries which may have been inflicted by Sergeant Jones through the negligent operation of the moving truck. The decision of the district court is affirmed.

AFFIRMED.