The primary issue in this case is whether Mr. Melton was acting in the course and scope of his role as a member of the New London/Bethany Volunteer Fire Department, when he was injured. This was an unpaid position to which the Act extends by special provisions. N.C.G.S. § 97-2(5). Determining liability is complicated by the fact that the "employee" is not paid for time on-task, and the "employer" does not derive revenue from its primary activity. In determining whether the volunteer fire department received an "appreciable benefit" from the effort in which Mr. Melton was engaged when he was injured, we must take into account that the lifeblood of the volunteer fire department is the goodwill of the community from which it must draw its volunteer members and necessary financial support. Fire fighting is hard and dangerous work, requiring expensive equipment and an unusual level of commitment from volunteers. Thus, contrary to the defendants' argument, the activities of a volunteer fire department go beyond the "acts reasonably necessary to extinguish fire and protect life and property from fire" for which the statutes extend them special authority. N.C.G.S. § 58-82-1.
The Deputy found on ample evidence that the volunteer fire department derived a benefit from cleaning up debris from the ruined building and using it in the construction of its Halloween "haunted house" fund-raising project. We believe he erred in treating the cleanup and reconstruction of the building as separate projects. There is undisputed testimony from members of the fire department that it decided to do this project on a single vote of the membership. In addition to the fund-raising aspect, the record is replete with evidence from which it can be inferred that the department stood to gain goodwill in the community by helping Mr. Talbert recover from the windstorm damage. This is underscored by the fact that other individuals and organizations in the community stepped forward to help in the project. That a local church would join in raising funds and an employer would give employees time off to aid in the reconstruction shows that the project was perceived in the community as disaster relief, and not merely construction for private benefit.
The undisputed testimony of all of the witnesses in a position to know was that the Bethany Fire Department voted to undertake the work as a department project. But because there was no written record of this decision, the hearing Deputy found "therefore, their testimony was not accepted as credible." Such a written record is not a legal prerequisite to compensability. This is not a case in which the hearing Deputy made a "credibility" judgment based on the demeanor of a witness, or was obliged to choose between conflicting accounts of the same event. Instead, he evaluated the likelihood that certain events transpired based on the absence of records, which he obviously believed would have been created. But this was not a business corporation with stockholders and creditors. In light of the testimony of the President and Secretary of the organization concerning the by-laws and informal record keeping of the department, and the circumstances at the time the decision to undertake the reconstruction project, we reverse this finding.
Upon review of all of the competent evidence of record with reference to the errors assigned, the Full Commission REVERSES the Opinion and Award of the Deputy Commissioner and makes the following
FINDINGS OF FACT
1. On May 18, 1991, the plaintiff, William D. Melton, was a member of the New London Volunteer Fire Department (Bethany VFD). On that day, he fell from the roof of a garage of a fellow volunteer fireman which was under construction and suffered multiple injuries.
2. The garage and property where Mr. Melton was injured was owned by Barry Talbert. At the time of Mr. Melton's injury, and for some period of time prior to the injury, Mr. Talbert held the office of vice-president of the volunteer fire department. Mr. Talbert's garage had been destroyed by a tornado or wind storm before May 18, 1991.
3. Members of the volunteer fire department regularly meet on Thursday of each week at the premises of the volunteer fire department. When the members learned that Mr. Talbert's garage had been destroyed by the storm, they met at Mr. Talbert's property instead. During the meeting the board of directors of the fire department voted to undertake the cleanup and reconstruction of Mr. Talbert's garage as a project of the fire department. The board of directors then took the matter to the general membership, who voted to undertake the cleanup and reconstruction of Mr. Talbert's garage as a fire department project. The volunteer fire department stood to benefit from goodwill generated by this project among its membership and in the community for helping Mr. Talbot recover from the natural disaster.
4. Shortly after the destruction of Mr. Talbert's garage, the fire department sponsored a barbecue at the fire department premises as a fund raiser for Mr. Talbert. The fireman cooked barbecue and sold the food to the public, and the profit was given to Mr. Talbert to assist him financially for the reconstruction of his building. A local church in the community also donated cakes and pies and provided some manpower to assist in this barbecue.
5. Members of the fire department met on several occasions at Mr. Talbert's property to assist with the cleanup. Mr. Talbert gave permission for members of the volunteer fire department to salvage debris from the ruined garage to be used for the construction of the "haunted house" fund raising project sponsored by the fire department. The fire department derived benefit from the haunted house, because it received money raised from operating the haunted house at Halloween. The plaintiff, William Melton, helped remove debris on several occasions to be used in the construction of the haunted house for the fire department.
6. Mr. Melton was injured at Mr. Talbert's property on Saturday, May 18, 1991. On Thursday, May 16, Mr. Melton attended the regular meeting of the fire department at the fire house. Mr. Talbert came to the meeting that night and announced to the membership that he needed men to come to his property on Saturday, May 18, to help with the construction of the roof. While at the meeting on May 16, plaintiff learned of the work detail at Mr. Talbert's garage on May 18.
7. Plaintiff arrived at Mr. Talbert's garage and was injured in the early morning hours of May 18. At the time he was injured, the plaintiff and Mr. Talbert were the only volunteer firemen working at the garage. At that time, three other gentlemen from the community who had been asked to assist Mr. Talbert by their employer were also working at the garage. Shortly after plaintiff fell and was injured, a number of other volunteer firemen arrived at Mr. Talbert's property to assist with the work detail.
8. Plaintiff has known Mr. Talbert for approximately 10 years through his association at the volunteer fire department. He had never done work for Mr. Talbert before he assisted with the cleanup and reconstruction of this building.
* * * * * * * * * * *
Based on the foregoing findings of fact, the Full Commission makes the following additional
CONCLUSIONS OF LAW
1. Plaintiff was injured in the course and scope of his role of a volunteer member of the New London/Bethany Volunteer Fire Department when he was injured on May 18, 1991. "Acts of an employee for the benefit of third persons generally preclude the recovery of compensation for accidental injuries sustained during the performance of such acts. . . . However, where competent proof exists that the employee understood, or had reasonable grounds to believe that the act resulting in injury was incidental to his employment, or such as would prove beneficial to his employer's interests or was encouraged by the employer in the performance of the act or similar acts for the purpose of creating a feeling of good will, or authorized so to do by common practice or custom, compensation may be recovered, since then a causal connection between the employment and the accident may be established."Guest v. Iron Metal Co., 241 N.C. 448, 452, 85 S.E.2d 596
(1955). Defendant derived a benefit from both the cleaning up of the ruined building and from the construction of the new building.
2. "An appellate court is, therefore, justified in upholding a compensation award if the accident is `fairly traceable to the employment as a contributing cause' or if `any reasonable relationship to employment exists.'" Kiger v. ServiceCo., 260 N.C. 760, 762, 133 S.E.2d 702(1963), Hoffman v. TruckLines, Inc., 306 N.C. 502, 506, 293 S.E.2d 807 (1982). _Pollock v.Reeves Brothers, Inc., 313 N.C. 287, 292, 328 S.E.2d 282 (1985). We conclude that the plaintiff's injuries are traceable to the "business" of the volunteer fire department through the promotion of goodwill in the community.
3. Plaintiff's activities on May 18, 1991 were taken at the behest of defendant, pursuant to a vote of the membership. Defendant derives a benefit from plaintiff's labor through both the fund raising activity of the "haunted house" and the goodwill of the community in helping a neighbor recover from a disaster. "Where the fruit of certain labor accrues either directly or indirectly to the benefit of an employer, employees injured in the course of such work are entitled to compensation under the Workmen's Compensation Act." Stewart v. Department ofCorrections, 29 N.C. App. 735, 737, 225 S.E.2d 336 (1976).
4. "An act outside an employee's regular duties which is undertaken in good faith to advance the employer's interest, whether or not the employee's own assigned work is thereby furthered, in within the course of employment." 1A-A. Larson, The Law of Workmens' Compensation, Section 27.14 (Page 357). Plaintiff's regular duties included, as defendant asserts, fighting fires and protecting lives. Plaintiff's duties also included raising funds for the fire department, promoting goodwill within the community, and participating in department projects to promote these goals.
* * * * * * * * * * *
Based on the foregoing findings of fact and conclusions of law, the Full Commission enters the following
ORDER
1. This case must be and hereby is REMANDED to the deputy commissioner for findings on the issue of damages.
2. Defendants shall pay the costs.
 S/ ____________________________ J. RANDOLPH WARD COMMISSIONER
CONCURRING:
S/ ____________________________ FORREST H. SHUFORD, II DEPUTY COMMISSIONER
S/ ____________________________ COY M. VANCE DEPUTY COMMISSIONER
JRW/RH/tmd