***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before the Deputy Commissioner and the briefs and arguments of the parties. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence, or rehear the parties or their representatives. Accordingly, the Full Commission affirms with modifications, the Opinion and Award of Deputy Commissioner Gillen.
 ***********
The Full Commission finds as fact and concludes as matters of law the following stipulations of the parties:
 STIPULATIONS
1. At all relevant times of this claim, the parties were subject to and bound by the Workers' Compensation Act. *Page 2 
2. An employment relationship existed between Judy Johnson and Southern Rehabilitation Network on June 29, 2007.
3. Southern Rehabilitation Network was, at all relevant times, insured for claims under the North Carolina Workers' Compensation Act by Synergy Coverage Solutions.
 ***********
On November 2, 2010, Defendants filed a motion to receive additional evidence. Plaintiff filed a response to Defendants' motion on November 5, 2010. In the discretion of the Full Commission, Defendants' motion to receive additional evidence is denied.
On November 5, 2010, Plaintiff filed a motion to strike Defendants' brief to the Full Commission to which Defendants filed a response on November 15, 2010. Plaintiff's motion to strike is granted only as it relates to evidence not in the record.
 ***********
The following were entered into evidence as:
 STIPULATED EXHIBITS a. The Pretrial Agreement, marked as stipulated exhibit 1.
 b. A collection of documents, including the Industrial Commission Forms filed in this matter, Plaintiff's medical records, and Plaintiff's medical bills, collectively tabbed A-Z and 1-8, marked as stipulated exhibit 2.
 ***********
The following were entered into evidence during the hearing before the Deputy Commissioner as:
 EXHIBIT
Plaintiff's job search information, marked as Plaintiff's Exhibit 1. *Page 3 
 *********** ISSUES PRESENTED
1. Did Plaintiff suffer a compensable workplace injury on or about June 29, 2007?
2. If so, to what workers' compensation benefits and/or medical treatment is Plaintiff entitled?
 ***********
Based upon all of the competent credible evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff, who is 62 years old, was trained as a nurse and worked as a field case manager for Defendant-Employer. Plaintiff's vocational history prior to her work for Defendant-Employer includes a significant amount of experience as a traveling nurse.
2. On June 29, 2007, while working for Defendant-Employer, Plaintiff traveled to Greensboro, North Carolina to treat a patient. Following this appointment, Jane Rouse, president of Defendant-Employer and Plaintiff's supervisor, instructed Plaintiff to travel to meet Ken Kennedy in order to retrieve her work laptop, which was being serviced by Mr. Kennedy. Mr. Kennedy provides service for Defendant-Employer's computer equipment. Ms. Rouse directed Plaintiff to follow Mr. Kennedy's logistical instructions to retrieve the laptop. Plaintiff used this work laptop on a daily basis to discharge the duties she performed for Defendant-Employer.
3. Mr. Kennedy was working in South Carolina on June 29, 2007. Following Mr. Kennedy's instructions as directed, Plaintiff agreed to drive from her Greensboro appointment approximately 30 miles past her home in Salisbury to meet Mr. Kennedy closer to Charlotte in the parking lot of a particular Sam's Club store. Plaintiff would not have been in the vicinity of *Page 4 
this Sam's Club on June 29, 2007 were it not for the task assigned by Defendant-Employer and the instructions of Mr. Kennedy. Mr. Kennedy advised plaintiff that he would meet her there between 5:00 p.m. and 6:00 p.m. Pursuant to her employment contract with Defendant-Employer, Plaintiff was entitled to mileage reimbursement for her trip to the Sam's Club on June 29, 2007.
4. Plaintiff arrived at the designated Sam's Club parking lot around 4:30 p.m., ready to meet Mr. Kennedy and receive the laptop. Mr. Kennedy communicated with plaintiff numerous times by mobile phone explaining that he was running late for their meeting. Due to the delays, plaintiff ate dinner with her mother-in-law near the Sam's Club while waiting. When Mr. Kennedy had still not arrived, plaintiff went inside the Sam's Club. Mr. Kennedy had previously articulated to Plaintiff that he knew that women liked to shop, and he therefore recommended to plaintiff that she go shopping in the Sam's Club to occupy her time until he arrived.
5. While in the Sam's Club, Plaintiff shopped for some personal items and also for a specific type of "Uniball" pen Plaintiff used in her work for Defendant-Employer, and for which she was reimbursed by Defendant-Employer.
6. At approximately 7:15 p.m., Plaintiff was preparing to check out of the Sam's Club store with her purchases when Mr. Kennedy called Plaintiff, having finally arrived in the vicinity. Mr. Kennedy instructed Plaintiff to leave the store without checking out to meet him in the parking lot immediately. Plaintiff did so, leaving her items in the Sam's Club with the plan to return and purchase them after she retrieved the laptop. Plaintiff met Mr. Kennedy in the parking lot and retrieved the laptop from him. *Page 5 
7. After returning to the inside of the Sam's Club to make her purchases, Plaintiff slipped and fell, hitting her head on a jewelry case and landing, in part, on her left hand/wrist. Plaintiff felt pain in her left wrist after the fall and "saw stars." While driving home, Plaintiff felt nauseated and vomited. Plaintiff called Ms. Rouse on June 30, 2007 and reported her injury. Ms. Rouse told plaintiff to take care of herself and to keep Defendant-Employer informed.
8. On June 30, 2007, Plaintiff was treated by Dr. David Russell with ProMed. Dr. Russell noted that Plaintiff's "[h]ead hit jewelry case. One of her earrings flew off. Only remembers getting up, might have had LOC. [P]laintiff has some headache, nausea but mainly complaining of pain in the left wrist . . . now all fingers are numb." This medical record also reflects diagnoses of undisplaced wrist fracture, hip contusion, and concussion. The note also reflects that Dr. Russell instructed Plaintiff to go to an emergency room that day for additional evaluation, including a CT scan.
9. On June 30, 2007, Plaintiff was examined by Dr. Robert Chen at the Northeast Medical Center emergency room. Dr. Chen noted diagnoses of closed head injury, postconcussive headache and left scaphoid fracture. Plaintiff's left hand/wrist was placed in a fiberglass cast.
10. With notes dated July 16, 2007, August 13, 2007, and August 31, 2007 Dr. Steven B. Sanford with the Carolina Hand Center restricted plaintiff from using her left upper extremity and wrote Plaintiff completely out of work.
11. Cognitive Rehabilitation Counselor Sylvia L. Whitmire evaluated Plaintiff on July 26, 2007, and wrote a September 1, 2009 letter that stated in part that "[e]ven though I did not witness the injury, I am sure [Plaintiff] has sustained a Traumatic Brain Injury." *Page 6 
12. On August 28, 2007, following a referral by Dr. Sanford, Plaintiff underwent an MRI of her left wrist on August 30, 2007. In a subsequent note interpreting this test, Dr. Sanford wrote that "[The MRI] does not show any significant difficulties with the scaphoid bone itself; however, there is what appears to be a tear of the scapholunate ligament with its attachment onto the lunate. There is noted to be widening of the scapholunate interval." The note went on to say that "[o]perative intervention is generally recommended for these injuries not only to improve current symptoms, but to diminish the potential long-term post-traumatic arthritis that could lead to the need for a total wrist effusion."
13. On September 6, 2007, Plaintiff saw Dr. John S. Gaul III of OrthoCarolina for the first time. Dr. Gaul wrote plaintiff out of work on that date and discussed surgery with her.
14. On September 18, 2007, Dr. Gaul performed capsulorrhaphy surgery on Plaintiff's left wrist. Dr. Gaul removed the surgical pins on December 5, 2007, and continued to write Plaintiff out of work. Plaintiff's chronic pain continued and Plaintiff underwent pain injections performed by Dr. Gaul in 2008 and 2009.
15. On March 17, 2008, just prior to Plaintiff's March 24, 2008 visit with Dr. Gaul, Defendant-Employer offered plaintiff a job. Plaintiff would begin work on April 1, 2008, with a decrease in hours at 30 hours per week and a reduced salary at $45,552.00. Once Plaintiff's hours increased to full time, her salary would then increase.
16. The March 17, 2008 job offer was conditioned upon Plaintiff's release to return to work by Dr. Gaul. Defendant-Employer needed a note from Dr. Gaul outlining her release and what duties she could perform. Plaintiff did not obtain such a note from Dr. Gaul.
17. Upon Plaintiff's return to work for Defendant-Employer, Plaintiff would have been required to attend an orientation in Raleigh, North Carolina. This is typical for employees *Page 7 
that have been out for more than six months. In addition, Defendant-Employer had upgraded its computer programs. While in Raleigh, Defendant-Employer would pay for Plaintiff to stay in a hotel during orientation. The Full Commission finds that this job was within Plaintiff's restrictions and was not make work.
18. On March 24, 2008, Dr. Gaul noted that Plaintiff should continue with therapy, and that Plaintiff could return to light duty work on May 1, 2008. Dr. Gaul testified that a nurse case management position was classified as sedentary based upon his knowledge and observations. Dr. Gaul further testified that it was acceptable for Plaintiff to drive 30 to 45 minutes at a time before taking a break. On May 5, 2008, Dr. Gaul noted upon examination that Plaintiff was improving and continued her therapy. Dr. Gaul noted that Plaintiff should be out of work unless light duty was available. If light duty was not available, it would be a month or two before Plaintiff could return to driving. Plaintiff told Dr. Gaul that light duty work was not available.
19. On June 2, 2008, Dr. Gaul noted that Plaintiff reported a 50% improvement and that Plaintiff had the possibility of a job that did not require as much repetitive work or driving. Dr. Gaul continued Plaintiff's therapy for the next two weeks and noted that Plaintiff should consider taking the new job if it was within her capabilities.
20. On June 16, 2008, Plaintiff resigned from her employment with Defendant-Employer and noted that she had accepted a full-time position with another employer. Plaintiff thanked Defendant-Employer for its support following her disability leave of absence.
21. On July 28, 2008, Dr. Gaul indicated that Plaintiff was working for a new disability group, Disability Care Management Professional. Dr. Gaul noted that it was fine for Plaintiff to work as she was at that time. Plaintiff saw Dr. Gaul again on October 9, 2008 and *Page 8 
December 2, 2008. On December 2, 2008, Dr. Gaul noted that Plaintiff could return to work as a rehabilitation nurse.
22. A medical note from Dr. Philip J. Luliano dated August 29, 2008 described psychiatric aspects to Plaintiff's presentation that could lead to Plaintiff's requiring of a mood stabilizer.
23. Dr. Gaul's December 2, 2008 note includes the remark, "I do wonder if [Plaintiff] has a problem with depression, in addition to anxiety issues." Another note from Dr. Gaul dated November 9, 2009 includes "[Plaintiff] was depressed and it took a long time to recover from surgery. Now she is on an antidepressant (Prestiq) and reports it is helpful for her . . ."
24. Dr. Gaul testified that Plaintiff suffered from adhesive capsulitis/bursitis in her left shoulder. When asked about the cause of this condition, Dr. Gaul replied, "I suspect that it was related to just her entire hand injury and the post-operative situation with a lot of swelling and pain and so forth." Dr. Gaul also testified that Plaintiff appeared depressed to him and that he deals with depression with some of his patients.
25. Plaintiff apparently received some salary continuation and/or disability plan benefits from Defendant-Employer subsequent to June 29, 2007.
26. Based upon the credible medical and vocational evidence of record, the physical limitations, chronic pain, and psychological issues Plaintiff suffered subsequent to June 29, 2007 injury are the direct and natural result of and causally related to her June 29, 2007 injury.
27. The greater weight of the evidence shows that Plaintiff has been capable of light duty work beginning on May 1, 2008. The credible medical and vocational evidence of record shows that, as a result of plaintiff's June 29, 2007 injury, and her causally related physical *Page 9 
limitations, chronic pain, and psychological problems, plaintiff was not able to work in any employment from June 30, 2007 through April 30, 2008.
28. Jane Rouse, president of Defendant-Employer and Plaintiff's supervisor, is a certified case manager, certified rehabilitation counselor, certified disability specialist, and licensed practicing counselor in North Carolina. Ms. Rouse is familiar with the job duties of a nurse case manager and testified that a nurse case manager is classified as light duty.
29. Ms. Rouse testified that Defendant-Employer employs nurse case managers in North Carolina and South Carolina and that the nurse case managers in North Carolina and South Carolina perform the same duties. Ms. Rouse further testified that Defendant-Employer tried to make accommodations for Plaintiff to return to her pre-injury job by providing her with a Toshiba notebook laptop that would allow her to write on it with a stylus using her dominant right hand without having to type or use her left hand and wrist. Employees of Defendant-Employer had used the Toshiba laptop to perform job functions and did not complain about its effectiveness. Plaintiff was first offered the use of the Toshiba laptop in December 2007 because Plaintiff had indicated that she was having surgery and that she thought she would be able to return to work after Christmas.
30. In addition to the Toshiba laptop, Defendant-Employer also offered Plaintiff the opportunity to use voice-activated software. At that time Defendant-Employer also had four other nurse case managers using the voice-activated software at that time. The other employees using the voice-activated software did not have any problems and were able to generate their reports. *Page 10 
31. The Full Commission finds based upon the greater weight of the evidence that the job offered to Plaintiff by Defendant-Employer in March 2008 was suitable employment and Plaintiff's failure to accept the position was unjustified.
32. The greater weight of the evidence establishes that the medical treatment Plaintiff received subsequent to June 29, 2007, was reasonable and medically necessary to effect a cure, give relief, and lessen the period of disability from Plaintiff's June 29, 2007 injury.
33. On June 29, 2007, Plaintiff suffered a compensable injury by accident that arose out of and in the course of her employment with Defendant-Employer when she slipped and fell in the process of performing a work-related task. This incident constituted an interruption of Plaintiff's normal work routine and the introduction thereby of conditions likely to result in unexpected consequences.
34. At the hearing of this matter before the Deputy Commissioner, Plaintiff testified that she is able to return to work. Dr. Gaul testified that Plaintiff is capable of working.
35. The credible medical and vocational evidence of record shows that, as a result of the conditions caused by the June 29, 2007 injury, taking into account both her physical and vocational limitations, plaintiff has been totally disabled and unable to earn any wages in any employment from June 30, 2007 through April 30, 2008.
36. Pursuant to the first method of calculation under N.C. Gen. Stat. § 97-2(5), Plaintiff's average weekly wage is ascertained by dividing Plaintiff's earnings in the period of 52 weeks immediately preceding the date of the injury divided by 52. According to the Form 22s submitted in this matter, Plaintiff earned $59,733.20 during the period of 52 weeks immediately preceding June 29, 2007. This amount of earnings, divided by 52, results in an average weekly *Page 11 
wage of $1,148.72. Plaintiff's average weekly wage of $1,148.72 yields the maximum compensation rate for a 2007 injury of $754.00.
37. Neither party pursued any issue in this matter in an unreasonable manner or without reasonable ground.
 ***********
Based upon the foregoing Stipulations and Findings of Fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. On June 29, 2007, as Plaintiff performed a laptop retrieval errand, Plaintiff slipped and fell, injuring her left upper extremity and head. Plaintiff's work duties and the conditions experienced during this incident constituted an interruption of Plaintiff's normal work routine and the introduction thereby of conditions likely to result in unexpected consequences. N.C. Gen. Stat. § 97-2(6).
2. The general rule is that an injury by accident that occurs while an employee travels to and from work is not one that arises out of or in the course of employment. Royster v. Culp, Inc.,343 N.C. 279, 281 (1996). One of the many recognized exceptions to this rule is the special errands exception. Stanley v. BurnsInternational Security Services, 161 N.C. App. 722 (2003).
3. However, under the particular circumstances in this case, the coming and going rule does not apply. Plaintiff's June 29, 2007 injury arose out of and in the course and scope of her employment with Defendant-Employer, in that the injury took place (a) in the process of her completing the specifically-assigned task of retrieving a computer laptop for Defendant-Employer, (b) during a trip for which Plaintiff was entitled to mileage reimbursement from *Page 12 
Defendant-Employer, (c) while she was also purchasing supplies used in her work for Defendant-Employer for which she would be reimbursed, (d) after it was recommended to her that she shop while waiting for Mr. Kennedy, who was over two hours late for their meeting, (e) while in a vicinity where Plaintiff would not have been but for the task specifically assigned by Defendant-Employer and the direction of their agent. N.C. Gen. Stat. § 97-2(6). See, Hunt v.State, 201 N.C. 707 (1931); Bellamy v. Manufacturing Co.,200 N.C. 676 (1931).
4. An injury is compensable if it occurs, as it did in this case, while Plaintiff is doing what she is reasonably expected to do within a time she is employed and at a place she is reasonably expected to be during that time. Hunt v. State,201 N.C. 707, 710 (1931). Furthermore, North Carolina Courts have held that the proper analysis turns on whether Plaintiff was acting for the benefit of Defendant-Employer "to any appreciable extent" when the accident occurred. Hoffman v. Ryder Truck Lines.306 N.C. 502, 506 (1982). In this case, the specifically-assigned errand of retrieving the laptop accrued to the direct benefit of Defendant-Employer to an appreciable extent, as did Plaintiff's buying of the work supplies while she was forced to wait.
5. Assuming arguendo that the coming and going rule applies to the facts in this case, Plaintiff's injury is compensable under the special errand and dual purpose analyses. The North Carolina Supreme Court has held "when a superior directs a subordinate employee to go on an errand or perform some duty beyond his normal duties, an injury sustained in the course of that task is compensable." Pollock v. Reeves Bros., Inc.313 N.C. 287, 294 (1985). Here, Plaintiff was sent on an errand by her superior to meet an individual to retrieve a laptop computer. Plaintiff was at the designated meeting location on time but had to wait for over two hours to complete the assigned task. The injury that Plaintiff suffered as a result of this errand *Page 13 
and the accompanied delay is compensable. Id. Furthermore, if Plaintiff's trip to the Sam's Club is viewed as having both business and personal purposes, well-established North Carolina law holds:
 [W]hen a trip serves both business and personal purposes . . . it is a business trip if a trip of this kind would have been made in spite of the failure or absence of the private purpose, because the service to be performed for the employer would have caused the journey to be made by someone even if it had not coincided with the employee's personal journey.
Dunn v. Marconi Communications, Inc.161 N.C. App. 606, 612-13 (2003) (quoting
1 Arthur Larson, The Law of Workmen's Compensation § 18.12 (1978)). In the case at hand, on June 29, 2007 plaintiff would not have driven past her house and travelled to the vicinity of the Sam's Club and therefore would never have been inside the Sam's Club were it not for the laptop retrieval errand assigned to Plaintiff by Defendant-Employer. Therefore, if it is analyzed as dual-purpose, plaintiff's trip to the Sam's Club was a business trip in that the business trip would have been made in the absence of any private purpose. Moreover, Plaintiff's trip inside the Sam's Club itself was suggested by the agent of Defendant-Employer as a result of an agent-caused delay and was, in part, a mission to purchase supplies she would use in her work for Defendant-Employer, for which she would be reimbursed.
6. Our courts have held that "when the primary injury is shown to have arisen out of and in the course of employment, every natural consequence that flows from the injury arises out of the employment, unless it is the result of an independent intervening cause attributable to claimant's own intentional conduct."English v. J.P. Stevens Co., 98 N.C. App. 466 (1990);Roper v. J.P. Stevens Co., 65 N.C. App. 69 (1983), disc.review denied, 310 N.C. 309 (1984). In this case, Plaintiff's post-injury conditions, including but not limited to her left wrist condition, left shoulder condition, and psychological condition experienced subsequent to June 29, 2007 *Page 14 
are compensable because they are natural consequences that flowed from the compensable June 29, 2007 injury. N.C. Gen. Stat. § 97-2(6).
7. North Carolina appellate courts have specifically considered the compensability of psychological injuries flowing from workplace injuries. In this case, Plaintiff's compensable June 29, 2007 accident and consequent chronic pain caused or exacerbated her subsequent psychological problems.Toler v. Black and Decker, 134 N.C. App. 695 (1999). The medical evidence of record establishes a causal relationship between Plaintiff's compensable June 29, 2007 accident and her subsequent psychological problems. Workman v. Rutherford Elec. MembershipCorp., 170 N.C. App. 481 (2005).
8. Given the credible medical and vocational evidence of record, and plaintiff's compensable injury of June 29, 2007, and the consequent chronic pain and psychological problems, plaintiff was temporarily totally disabled and is entitled to temporary total disability compensation at the rate of $754.00 per week for the period from June 30, 2007 through April 30, 2008. N.C. Gen. Stat. § 97-29; Russell v. Lowes Prod. Distrib.,108 N.C. App. 762 (1993).
9. If an injured employee refuses employment procured for her, which is suitable to her capacity, she shall not be entitled to any compensation at any time during the continuance of such refusal, unless in the opinion of the Commission such refusal was justified. Plaintiff's refusal of the nurse case manager position offered by Defendant-Employer after May 1, 2008 was not justified because the job was within her restrictions and was therefore, suitable employment. Therefore, Plaintiff's disability benefits are suspended as of May 1, 2008. N.C. Gen. Stat. § 97-32.
10. Subject to the provisions of N.C. Gen. Stat. § 97-25.1, plaintiff is entitled to have Defendants provide all medical treatment, incurred or to be incurred, necessitated by the *Page 15 
June 29, 2007 compensable accident when bills for the same have been approved pursuant to Industrial Commission Procedures. N.C. Gen. Stat. §§ 97-2(19); 97-25; 97-25.1. This shall include a functional capacity evaluation and vocational counseling.Id.
11. Subject to the provisions of N.C. Gen. Stat. § 97-25.1, Plaintiff is entitled to have Defendants provide any past and future psychiatric treatment related to Plaintiff's June 29, 2007 compensable accident when bills for the same have been approved pursuant to Industrial Commission procedures. N.C. Gen. Stat. § 97-25; Workman v. RutherfordElectric Membership Corp., 170 N.C. App. 481 (2005); Toler v.Black and Decker, 134 N.C. App. 695 (1999).
12. Pursuant to the first method of calculation articulated in N.C. Gen. Stat. § 97-2(5), plaintiff's average weekly wage is ascertained by dividing Plaintiff's earnings in the period of 52 weeks immediately preceding the date of the injury divided by 52. According to the Form 22s submitted in this matter, Plaintiff earned $59,733.20 during the period of 52 weeks immediately preceding June 29, 2007. This amount divided by 52 results in an average weekly wage of $1,148.72. Plaintiff's average weekly wage of $1,148.72 yields the maximum compensation rate for injuries occurring in 2007 of $754.00. N.C. Gen. Stat. § 97-2(5).
13. Defendants are entitled to a credit for any salary continuation and disability plan benefits provided by Defendant-Employer during Plaintiff's period of temporary total disability. N.C. Gen. Stat. § 97-42.
14. Neither party pursued any issue in this matter in an unreasonable manner or without reasonable ground. N.C. Gen. Stat. § 97-88.1.
 ***********
Based upon the foregoing Stipulations, Findings of Fact, and Conclusions of Law the Full Commission enters the following: *Page 16 
 AWARD
1. Given the credible medical and vocational evidence of record, and her compensable injury of June 29, 2007, Defendants shall pay Plaintiff, subject to the attorney's fee approved below and the credits to which Defendants are entitled, temporary total disability compensation at a rate of $754.00 per week for the period from June 30, 2007 through April 30, 2008. Those payments that have accrued shall be paid in a lump sum, subject to the attorney's fee approved below. Plaintiff's disability benefits are suspended effective May 1, 2008 for so long as Plaintiff continues to refuse suitable employment.
2. Subject to the provisions of N.C. Gen. Stat. § 97-25.1, Defendants shall pay all medical expenses incurred or to be incurred as a result of the compensable injury by accident sustained by Plaintiff on June 29, 2007 when bills for the same have been approved pursuant to Industrial Commission procedures.
3. Defendants shall pay all psychological treatment expenses incurred or to be incurred as a result of the June 29, 2007 compensable injury by accident when bills for the same have been approved pursuant to Industrial Commission procedures, subject to the provisions of N.C. Gen. Stat. § 97-25.1.
4. A reasonable attorney fee of twenty-five percent of the compensation due Plaintiff under paragraph 1 of this Award is approved for Plaintiff's counsel.
5. No attorney's fees are appropriate to be awarded in this matter under N.C. Gen. Stat. § 97-88.1.
6. Defendants' motion for sanctions is denied.
7. Defendants shall pay the costs due the Commission.
This the 23rd day of February 2011. *Page 17 
 S/______________ STACI T. MEYER COMMISSIONER
CONCURRING:
 S/____________________ BERNADINE S. BALLANCE COMMISSIONER
 S/________________________ LAURA KRANIFELD MAVRETIC COMMISSIONER *Page 1