***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Phillips. The appealing party has shown good grounds to reconsider the evidence. The Full Commission REVERSES the Opinion and Award of the Deputy Commissioner and enters the following Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. The employer-employee relationship existed between plaintiff and defendants on March 7, 2001.
3. The date of plaintiff's injury was March 7, 2001.
4. Plaintiff's average weekly wage is $442.00.
5. Specialty Risk Services was the carrier on the risk.
6. The parties stipulated to have the following documents admitted into the evidence of record at the hearing before Deputy Commissioner Phillips:
 a. Stipulated Exhibit 1-a complete copy of plaintiff's medical records
 b. Stipulated Exhibit 2-Industrial Commission Forms 18, 18M, 19, 25R, 33, 33R and 61
c. Stipulated Exhibit 3-plaintiff's accident report
d. Stipulated Exhibit 4-plaintiff's recorded statement
 e. Stipulated Exhibit 5-defendants' procedures and policies for bank deposits
f. Stipulated Exhibit 6-plaintiff's job description
 ***********
Based upon the competent evidence and stipulations of the parties, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff was fifty-two years old as of the hearing before the Deputy Commissioner and has a tenth grade education.
2. Plaintiff began working for defendant-employer on September 19, 2000 as a first associate manager. The store where plaintiff worked was located on Roxboro Road in Durham, North Carolina. Plaintiff was a salaried employee who worked fifty hours or more per week.
3. Plaintiff's duties were to open or close the store, close out registers, keep the store secure, run errands, stock merchandise, help unload trucks, and complete closing procedures. Plaintiff was responsible for making a deposit of money at the bank after the store had closed or throughout the day as needed as part of the regular procedure for handling revenues. During busy seasons, deposits were made at other times as well.
4. Defendant-employer required employees to follow a procedure to process money to be deposited. One of the managers counted the register drawer with the cashier present, both employees verified the deposit, a log was signed, and then the manager took the deposit to the bank while another employee followed for security reasons. Each employee drove his/her own car to the bank and departed from that location. The manager was required to obtain a deposit slip. If the bank was closed, the manager obtained a deposit slip the following day. Plaintiff closed the store and made the night deposit two or three times a week.
5. On March 7, 2001 the store closed at 9:00 p.m. After completing closing procedures, plaintiff and another employee, Tameka, drove to the Central Carolina Bank located on Roxboro Street. The bank was located approximately four tenths of a mile from the store and was on the opposite side of the street from the store.
6. After making the deposit and saying goodnight to Tameka, plaintiff proceeded south on Roxboro Street toward her residence, intending to head directly home. At 9:49 p.m plaintiff was three tenths of a mile from the bank when she was struck in the driver's side by a vehicle turning left traveling in the opposite direction on Roxboro Street.
7. An accident report was completed by Officer Westcott of the Durham Police Department. The driver of the car that struck plaintiff stated in the report he did not see plaintiff. The driver of the other car was cited for operating a vehicle without a license.
8. Plaintiff was taken by ambulance to Durham Regional Hospital with complaints of neck, wrist, and leg injuries. She was treated and released.
9. Plaintiff reported the accident to her manager, Tim Kudlinski, the following day. In her recorded statement with adjuster Barbara Taylor on July 25, 2001, plaintiff admitted that she did not specifically report the accident as a workers' compensation claim when she talked to Mr. Kudlinski.
10. Plaintiff missed several days of work following the accident, but continued to work for defendants until September 8, 2001 when she went out of work to undergo a two-level cervical fusion by Dr. Michael Haglund at Duke University Medical Center. The surgery occurred on September 11, 2001.
11. On November 30, 2001, plaintiff was given a letter by Dr. Haglund that she would be unable to return to work at that time due to pain and symptoms from the surgery. In the out of work note Dr. Haglund stated that he could not give an exact date plaintiff would be released to return to work.
12. After receiving the November 30, 2001 letter, defendants terminated plaintiff's employment and her group health coverage.
13. According to Dr. Haglund, plaintiff was able to return to light duty employment on December 31, 2001 with no lifting over 20 pounds. Dr. Haglund expressed no opinion whether plaintiff could perform her previous job duties with defendant-employer.
14. Plaintiff reached maximum medical improvement on March 11, 2002, with a permanent restriction of no lifting over 30 pounds. Plaintiff retains a 15% permanent functional impairment to her back as a result of the accident on March 7, 2001.
15. Plaintiff testified at the hearing before the Deputy Commissioner that she had not returned to any employment. Plaintiff began looking for employment approximately two months before the hearing and had been unable to find any employment.
16. The Full Commission finds based upon the greater weight of the evidence of record that plaintiff had completed her duties for defendants upon making the bank deposit at Central Carolina Bank. Plaintiff was on her way home from her employment when the accident occurred and had no further obligations or duties to defendants until she returned for her next scheduled shift.
17. Making a bank deposit upon closing the store was a regular part of plaintiff's duties. It was done each time plaintiff closed the store. Plaintiff testified she made the night deposit two or three times a week for a total of at least 50 times in the five months she had been employed. Plaintiff's employment period ended upon making the deposit and plaintiff began her way home. The intersection where plaintiff was struck was the same one she would have encountered if she had gone home directly from the store instead of first making the deposit.
 ***********
Based upon the foregoing findings of fact the Full Commission enters the following:
 CONCLUSIONS OF LAW
1. An employee is entitled to workers' compensation benefits for injuries sustained in an accident arising out of and in the course of employment. N.C. Gen. Stat. § 97-2(6); Ross v. Young Supply Co.,71 N.C. App. 532, 322 S.E.2d 648 (1984). To meet the "arising out of the employment" requirement there must be a causal connection between the injury and the employment. Barham v. Food World, 300 N.C. 329,266 S.E.2d 676, reh'g denied, 300 N.C. 562, 270 S.E.2d 105 (1980). An injury occurs "in the course" of the employment if it is "during the period of employment, at a place where an employee's duties are calculated to take him, and under circumstances in which the employee is engaged in an activity which he is authorized to undertake and which is calculated to further, directly or indirectly, the employer's business." Powers v.Lady's Funeral Home, 306 N.C. 728, 730, 295 S.E.2d 473, 475 (1982).
2. Ordinarily, an injury sustained by an employee while going to or coming from work does not arise out of and in the course of employment.Royster v. Culp, Inc., 343 N.C. 279, 470 S.E.2d 30 (1996). An exception to the coming and going rule provides that an employee is entitled to benefits under the Workers' Compensation Act if he is injured while performing a special duty or errand for his employer. Powers v. Lady'sFuneral Home, supra. Where a special errand began and ended is a question of fact and must be determined on a case by case basis. Massey v. Boardof Education, 204 N.C. 193, 167 S.E. 695 (1933).
3. In cases applying the special errand rule, compensability of a claim depends upon whether or not the employee was acting for the benefit of his employer "to any appreciable extent" when the accident occurred or whether the employee was acting solely for his own benefit or that of a third person. Guest v. Iron Metal Co., 241 N.C. 448, 452,85 S.E.2d 596, 600 (1955); Deseth v. Lenscrafters, Inc., ___ N.C. App. ___, 585 S.E.2d 264 (2003). Some risk inherent to the employment must be a contributing proximate cause of the accident and the risk must be enhanced by the employment and one to which the worker would not have been equally exposed to apart from the employment. Gallimorev. Marilyn's Shoes, 292 N.C. 399, 233 S.E.2d 529
(1977).
4. The facts in the case at bar establish that plaintiff's accident does not fall under the special errand exception to the coming and going rule. Plaintiff's trip to the bank to make the night deposit did not constitute a special errand because the night deposits occurred with such frequency and regularity that this duty was an established part of her regular job. Therefore, the coming and going rule applies because the accident occurred after plaintiff completed her regular job duties and was on her way home. At the time of the motor vehicle accident, plaintiff was not traveling to a destination required by defendant-employer and was not engaged in the furtherance of the employer's business. See Wright v.Wake County Public Schools, 103 N.C. App. 282, 405 S.E.2d 228 (1991). The obligations of her employment did not require plaintiff to be at the place where the accident occurred. The accident occurred after plaintiff finished defendant-employer's business and was traveling through the same intersection she would have used if she had left the store and headed directly home. The fact plaintiff left for home from the bank instead of from defendant's store did not change the risk that she was exposed to or increase the risk that she encountered in traveling from her employment.Id.
5. On March 7, 2001, plaintiff did not sustain an injury by accident arising out of and in the course of her employment with defendants. N.C. Gen. Stat. § 97-2(6). Plaintiff's injury by accident occurred while she was traveling home from work and is therefore not compensable.Royster v. Culp, supra.
6. Defendants' defense of this claim was not unreasonable. N.C. Gen. Stat. § 97-88.1.
 ***********
Based upon the findings of fact and conclusions of law, the Full Commission enters the following:
 ORDER
1. Under the North Carolina Workers' Compensation Act, plaintiff's claim for compensation must be and is HEREBY DENIED.
2. Each side shall bear its own costs, except that defendants shall pay an expert witness fee of $400.00 to Dr. Haglund.
This the ___ day of October 2003.
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
 S/____________ BUCK LATTIMORE CHAIRMAN
 S/_______________ DIANNE C. SELLERS COMMISSIONER
LKM/kjd